Sidney **HIRSCHFELD**, Director, Mental Hygiene Legal Service, Second Judicial Department, O.J., M.P., J.M. and J.R., individually and on behalf of all others similarly situated, Plaintiffs,

v.

James **STONE**, Commissioner, New York State Office of Mental Health, in his official capacity, Richard Bennett, Executive Director, Mid–Hudson Forensic Psychiatric Center, in his official capacity, Charles Smith, M.D., Clinical Director, Mid–Hudson Forensic Psychiatric Center, in his official and individual capacities, Muzaffar M. Khan, M.D. in his individual capacity, Dominic Ferro, M.D., in his individual capacity, Amruta Kodukula, M.D., in his individual capacity, and Patricia Khoo, M.D., in her individual capacity, Defendants.

**No. 99 CIV 11693 WHP.**

United States District Court,
S.D. New York.

May 9, 2000.

178

Valdi Licul, Mental Hygiene Legal Service, Second Judicial Department, Brooklyn, NY, Dennis Feld, Mental Hygiene Legal Service, Second Judicial Department, Mineola, NY, Laura R. Johnson, New York City, for plaintiffs.

William Jaffe, Esq., Office of Attorney General, New York City, for defendants.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

Plaintiffs Sidney Hirschfeld, Director of Mental Hygiene Legal Service of the Second Judicial Department; O.J.; M.P.; J.M. and J.R. (collectively "plaintiffs") filed this civil rights class action complaint against defendants James Stone, Commissioner of the New York State Office of Mental Health; Richard Bennett, Executive Director of the Mid–Hudson Forensic Psychiatric Center; Charles Smith, M.D., Clinical Director of the Mid–Hudson Forensic Psychiatric Center; Muzaffar M. Khan, M.D.; Dominic Ferro, M.D.; Amruta Kodukula, M.D.; and Patricia Khoo, M.D. (collectively "defendants"). Plaintiffs allege that defendants have a policy and practice of disclosing confidential medical and psychiatric information in violation of the United States Constitution and state law.

Plaintiffs moved by order to show cause for class certification, a preliminary injunc-

tion, and a sealing order. The parties fully briefed the issues, and this Court heard oral argument. For the reasons set forth below, plaintiffs' motions are granted in their entirety.

## Background

### I. The Parties

Plaintiff Sidney Hirschfeld is the Director of the New York State Mental Hygiene Legal Service, Second Judicial Department ("MHLS"). (Compl.¶ 37) MHLS is a New York State agency statutorily mandated to provide legal services to people admitted to facilities licensed and operated by the New York State Office of Mental Health, including individuals admitted after being found incapacitated to stand trial. (Compl.¶ 38) Plaintiffs O.J., M.P., J.M. and J.R. are individuals who were found incapacitated to stand trial and are currently or were formerly confined to Mid–Hudson Forensic Psychiatric Center ("Mid–Hudson") for care and treatment. (Compl. ¶¶ 42, 43; O.J. Aff. ¶ 1; M.P. Aff. ¶ 1; J.M. Aff. ¶ 1; J.R. Aff. ¶ 1) Plaintiffs seek to represent a class consisting of "all incapacitated criminal defendants who are currently confined to Mid–Hudson, or who will be confined to Mid–Hudson, for purpose[s] of care and treatment and who will be returned to the local criminal courts as fit to proceed." (Compl.¶ 67)

Defendant James Stone is the Commissioner of the New York State Office of Mental Health ("OMH") and, in that capacity, supervises all OMH-run facilities, including Mid–Hudson. (Compl.¶¶ 45–47) Defendant Richard Bennett, the Executive Director of Mid–Hudson, is responsible for supervising all employees and ensuring adequate care and treatment of patients in the Mid–Hudson facility. (Compl.¶¶ 48–50) Defendant Charles Smith, M.D., is the Clinical Director of Mid–Hudson. He directly supervises all Mid–Hudson treatment staff and personally reviews their treatment decisions and written reports. (Compl. ¶¶ 51–53; Smith Aff. ¶¶ 1,2) Defendant Muzaffar Khan, M.D. was plaintiff O.J.'s treating psychiatrist at Mid–Hudson. (Compl. ¶¶ 54–56, 98; O.J. Aff. ¶ 2) Defendant Dominic Ferro, M.D. was plaintiff M.P.'s treating psychiatrist at Mid–Hudson.

(Compl. ¶¶ 57–59; M.P. Aff. ¶ 2) Defendant Amruta Kodukula, M.D., was plaintiff J.M.'s treating psychiatrist at Mid–Hudson. (Compl. ¶¶ 60–62; J.M. Aff. ¶ 3) Defendant Patricia Khoo was plaintiff J.R.'s treating psychiatrist at Mid–Hudson. (Compl. ¶¶ 63–65; J.R. Aff. ¶ 3)

### II. Relevant State Statutes

Plaintiffs contend that a number of state statutes are relevant to this action. (Compl.¶¶ 4–36) Principal among them is New York State Criminal Procedure Law ("CPL") Article 730, which establishes a comprehensive statutory scheme dealing with the examination and treatment of criminal defendants either alleged or found incapacitated to stand trial. If a criminal court believes that a defendant is incapacitated to stand trial, it must issue an order of examination directing that the defendant be examined by two court-appointed psychiatric examiners. See CPL § 730.30. The psychiatric examiners assess the defendant's capacity and issue "Examination Reports" to the court. An Examination Report sets forth the examiner's opinion as to whether the defendant is incapacitated, the nature of the examination, and if the defendant is found to be incapacitated, a detailed statement of the reasons for that opinion. See CPL § 730.10.

When a court finds a defendant to be incapacitated, based on the Examination Reports and any other subsequent hearings, it has two options. If the defendant is charged with a misdemeanor, the criminal charges are dismissed and the individual is sent to a psychiatric facility for not more than 90 days to determine whether he should be released or civilly committed. If the defendant is charged with a felony and an indictment has not been filed, he is committed to a psychiatric facility for up to 90 days or, if an indictment has been filed, he is committed for up to one year. See CPL § 730.40. While the individual is confined, the criminal action against him is suspended until the superintendent of the psychiatric facility where he is confined determines he has regained the capacity to proceed. See CPL § 730.60. During confinement, an individual's capacity to proceed is periodically reviewed.

When an incapacitated defendant is found fit to stand trial by the psychiatric facility, the superintendent must notify the court and the prosecutor of such a determination. *See* CPL § 730.60. Once the court has received that notification, there are three possible dispositions. If neither the defendant, the prosecutor, nor the court questions the finding of fitness, the criminal action against the defendant proceeds. If the defendant, the prosecutor, and the court all agree that the defendant remains unfit, the court may order the defendant returned to the psychiatric facility for the remainder of the prior order of commitment. Alternatively, the court can order a hearing challenging the finding of fitness, either on its own motion or on the request of the defendant or the prosecutor and after the hearing, the court will either return the defendant to the psychiatric facility because he remains unfit or will proceed with the criminal action if the defendant is no longer incapacitated. *See* CPL §§ 730.30, 730.60.

The parties dispute the form through which notice of fitness may be communicated to the court. Plaintiffs allege that the superintendent is only permitted to use a "Notification of Fitness to Proceed" form. This form only allows the superintendent to disclose the fact that the defendant is fit to proceed. (Compl.¶ 18) Defendants contend that it is permissible to submit "Fitness Reports" along with the Notification of Fitness to Proceed form pursuant to CPL § 730.60(2). (Smith Aff. ¶ 4) Defendants maintain that these Fitness Reports provide information that is necessary to determine fitness to stand trial. (Smith Aff. ¶ 4) Although the reports are not standardized, the categories of information in the Fitness Reports generally include the following: current mental status exam, observations regarding fitness, history of dangerousness, history relevant to fitness, current treatment, DSM IV diagnosis, and forensic psychiatric opinion. (J.R. Aff. Ex. B; M.P. Aff. Ex. A; O.J. Aff. Ex. A; J.M. Aff. Ex. B) Plaintiffs allege that these Fitness Reports contain confidential information that defendants are effectively disclosing to the public, since the reports are placed in unsealed court files accessible to the general public. This, plaintiffs allege, violates their privacy rights un-der the Fourteenth Amendment to the United States Constitution.

Also relevant to this case are two statutes that address confidentiality of medical information. New York State Mental Hygiene Law ("MHL") § 33.13 requires each OMH facility to maintain records for each patient. The statute forbids the OMH facility from releasing those records unless it falls within a specifically enumerated exception. *See* MHL § 33.13(c). Here, the exceptions defendants contend are relevant to the release of medical information in the Fitness Reports are: (1) pursuant to a court order finding that the interests of justice significantly outweigh the need for confidentiality; (2) to an endangered individual and a law enforcement agency when a treating psychiatrist has determined that a patient represents a serious and imminent danger to that individual; or (3) with the consent of the patient. *See* MHL § 33 .13(c). MHL § 33.13 further requires that any disclosure be limited to information necessary in light of the reason for disclosure. *See* MHL § 33.13(f).

Finally, New York State Public Health Law ("PHL") § 2782 governs the confidentiality of HIV related information. Under this statute, any individual who obtains HIV related information in the course of providing health or social services may not disclose that information except under specifically enumerated circumstances. *See* PHL § 2782. Defendants contend that a number of these exceptions support the release of HIV related information in the Fitness Reports. HIV related information may be released pursuant to a court order finding: (1) a compelling need for disclosure of the information for the adjudication of a criminal or civil proceeding; (2) clear and imminent danger to an individual whose life or health may unknowingly be at significant risk as a result of contact with the individual to whom the information pertains; or (3) that the applicant is lawfully entitled to the disclosure and the disclosure is consistent with the provisions of the confidentiality statute. Alternatively, HIV related information may be released upon application of a state, county or local health officer who demonstrates clear and imminent danger to public health. *See* PHL §§ 2782,

2785. The statute provides a method governing the release of HIV related information, which includes notice requirements, requirements for written findings of fact by a court, and sealing requirements. *See* PHL § 2785. Additionally, like MHL § 33.13, an order authorizing disclosure must limit the disclosure to information necessary to fulfill the purpose for which the order is granted. *See* PHL § 2785.

### III. *Facts Regarding Named Plaintiffs*

Each of the named plaintiffs was admitted to Mid–Hudson as an incapacitated defendant and assigned a treating psychiatrist. (Compl.¶ 54–56, 97, 115–116, 133, 135, 158–159) Two of the named defendants, J.M. and J.R., received patient handbooks upon their admission to Mid–Hudson assuring them that clinical information would remain confidential and would not be released without their consent, except to their attorneys or pursuant to court order. (Compl. ¶¶ 136, 161; J.M. Aff. ¶ 2, Ex. A; J.R. Aff. ¶ 2, Ex. A) Attorneys from MHLS sent letters to the treating doctors asserting the right to confidentiality on behalf of each of the named plaintiffs. (Compl.¶¶ 100, 118, 137, 162) All of treating doctors issued Fitness Reports which revealed extensive confidential information related to plaintiffs' psychiatric and medical treatment, including medical information about HIV, tuberculosis, or hepatitis; sexual orientation and preference; and information regarding family histories of violence, mental illness or substance abuse. (Compl. ¶¶ 102–11, 123–26, 139–51, 168–73; O.J. Aff. ¶ 4, Ex. A; M.P. Aff. ¶ 4, Ex. A; J.M. Aff. ¶ 5, Ex. B; J.R. Aff. ¶ 5, Ex. B) Each of the named plaintiff alleges that an unsealed copy of his or her Fitness Report was sent to defendant Dr. Charles Smith, who annexed it to the Notification of Fitness to Proceed form and filed it unsealed in triplicate with the court. (Compl.¶¶ 111–13, 129–31, 153–55, 175–76) The named plaintiffs state that the release caused them great personal embarrassment and that they would have been hesitant to accept the treatment offered to them at Mid–Hudson if they knew such personal information could be made accessible to the general public. (O.J. Aff. ¶¶ 6,7; M.P. Aff. ¶¶ 9, 10; J.M. Aff. ¶¶ 8, 9; J.R. Aff. ¶¶ 7, 9)

### *Discussion*

Plaintiffs filed motions by order to show cause for: (1) class certification, (2) a preliminary injunction, and (3) a sealing order. The Court addresses them seriatim.

### I. *Class Certification*

Plaintiffs move to certify a class consisting of "all incapacitated criminal defendants who are currently confined to Mid–Hudson, or who will be confined to Mid–Hudson, for purpose[s] of care and treatment, and who will be returned to the local criminal courts as fit to proceed." (Compl.¶ 67) Plaintiffs seek class certification only for purposes of obtaining declaratory and injunctive relief on the federal claims and not for the purpose of seeking damages on their federal or state claims. Defendants oppose plaintiffs' motion for class certification, alleging that it is unnecessary because defendants have promised to treat all patients alike as a result of the outcome in this action. (Smith Aff. ¶ 37)

### A. *Standard for Class Certification*

Federal Rule of Civil Procedure 23 establishes two prerequisites for class actions. First, the party seeking class certification must prove that the proposed class meets the four requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed.R.Civ.P. 23(a); *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir.1999); *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir.1997). Second, the party seeking class certification must show that the proposed class action falls within one of the types of class actions maintainable under Rule 23(b): (1) prosecution of separate actions by individual parties would create a risk of either inconsistent adjudications or would be dispositive of the interest of those members not parties to the adjudication; (2) defendants have acted or refused to act on

grounds generally applicable to the class; or (3) questions of law or fact common to members of the class predominate, and a class action is superior to other available methods for adjudication. *See* Fed.R.Civ.P. 23(b); *Caridad*, 191 F.3d at 292; *Marisol A.*, 126 F.3d at 376.

When considering a motion for class certification, courts should consider the allegations in the complaint as true. *See Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir.1978) ("it is proper to accept the complaint allegations as true in a class certification motion"). A court may not examine the merits of the case in a motion for class certification. *See Caridad*, 191 F.3d at 291 (citing *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974)). However, a court may consider material outside the pleadings in determining the appropriateness of class certification. *See Kaczmarek v. International Bus. Machines Corp.*, 186 F.R.D. 307, 311 (S.D.N.Y.1999) (citing *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir.1982)).

## B. *Requirements of Federal Rule of Civil Procedure 23(a)*

### 1. *Numerosity*

Turning to the first requirement under Rule 23(a), plaintiffs must show that the proposed class is so numerous that joinder of all members is impracticable. Impracticable does not mean impossible, but simply difficult or inconvenient. *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993). Precise enumeration or identification of the class members is not required. *See Robidoux*, 987 F.2d at 935.

Plaintiffs are unable to enumerate the exact number of individuals in the potential class because of the fluid nature of the class; people are constantly being admitted to and discharged from the Mid–Hudson facility. (Hirschfeld Aff. ¶ 8) However, plaintiffs estimate that at any given time, there are approximately 150 to 170 incapacitated people at Mid–Hudson who are there pursuant to CPL § 730. (Hirschfeld Aff. ¶ 9) This Court finds that the number of individuals in the class satisfies the numerosity requirement. The Second Circuit has found even fewer members of a class to satisfy the numerosity requirement. *See, e.g., Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995) (numerosity presumed at forty); *Robidoux*, 987 F.2d at 935 (certifying class estimated to have between 22 and 133 members).

The fluid nature of the class further supports this Court's finding that joinder is impracticable. *See, e.g., Andre H. v. Ambach*, 104 F.R.D. 606, 611 (S.D.N.Y.1985) ("The fact that the population ... is constantly revolving establishes sufficient numerosity to make joinder of the class members impracticable."); *Arthur v. Starrett City Assocs.*, 98 F.R.D. 500, 505–06 (E.D.N.Y.1983) ("This fluctuating nature of the pool of prospective plaintiffs further demonstrates the impracticability of joinder.").

### 2. *Commonality and Typicality*

The next two requirements of Rule 23(a) are commonality and typicality. "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A.*, 126 F.3d at 376. The crux of both requirements is to ensure that "maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A.*, 126 F.3d at 376 (quoting *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2371 n. 13, 72 L.Ed.2d 740 (1982)). Specifically, the commonality requirement is met when the plaintiffs' complaints share a common question of law or fact, *see Marisol A.*, 126 F.3d at 376; *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166–67 (2d Cir.1987), while the "typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability ... irrespective of minor variations in the fact patterns underlying the individual claims." *Robidoux*, 987 F.2d at 936–37. Here, plaintiffs have

met the commonality and typicality requirements. Common questions of law and fact in this action include: (1) whether information obtained by defendants during the course of plaintiffs' treatment is protected by the Fourteenth Amendment to the United States Constitution, and if so, (2) whether defendants' placement of such information in Fitness Reports allegedly filed unsealed with the courts, is supported by a substantial state interest that overrides plaintiffs' right to privacy. Additionally, the named plaintiffs' claims arise from the same course of conduct that gives rise to the claims of all of the class members and are based on the same legal theories. In every case in which defendants determine that an incapacitated person has become fit to proceed, an unsealed Fitness Report is filed with the court disclosing plaintiff's personal medical and psychological information collected by his or her treating doctor while at Mid–Hudson. (Hirschfeld Aff. ¶ 10) These reports typically contain information about the most intimate details of these individuals' lives, including HIV status, medical histories, alcohol and drug treatment histories, and personal sexual information. (Hirschfeld Aff. ¶ 11) Each of the plaintiffs will have to prove that the information placed in the Fitness Reports by defendants was protected and that it is released in violation of their constitutional rights.

### 3. *Adequacy*

The adequacy of representation requirement entails two factors: (1) class counsel must be qualified, experienced and generally able to conduct the litigation, and (2) the interests of the named plaintiffs cannot be antagonistic to those of the remainder of the class. *See Marisol A.*, 126 F.3d at 378; *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2d Cir.1992). Both factors are met in this case.

This Court is confident that class counsel can adequately represent the class. Plaintiffs are represented by MHLS and the Special Litigation Unit of the Criminal Defense Division of Legal Aid Society ("LAS"). MHLS is statutorily mandated to initiate and prosecute legal actions necessary to safeguard patients' rights and acts as counsel for every incapacitated person confined to a state psychiatric institution, including Mid–Hudson. (Hirschfeld Aff. ¶¶ 14, 15) MHLS specializes in mental health law and has litigated numerous cases on behalf of mentally ill individuals, including class actions and actions involving mentally incapacitated criminal defendants. (Hirschfeld Aff. ¶¶ 16, 17).

This Court also believes that the named plaintiffs are able to fairly represent the class. "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *See Kuck v. Berkey Photo, Inc.*, 81 F.R.D. 736, 740 (S.D.N.Y.1979) (quoting 7 Wright & Miller, Federal Practice & Procedure § 1768, at 639 (1972)); *see also In re Joint Eastern and Southern Dist. Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir.1996) (rejecting plaintiffs' inadequacy of representation claim where there was no indication that their claims were antagonistic to the claims of any other class members). This Court agrees with plaintiffs that there is little, if any, potential for any conflicting interests in this action. The interests of the named plaintiffs appear to be identical to those of the class because all are subject to the same allegedly unconstitutional actions by defendants. If the named plaintiffs prevail, all class members will benefit. Accordingly, plaintiffs have met each of the requirements of Rule 23(a).

### C. *Federal Rule of Civil Procedure 23(b) Requirements*

Plaintiffs' proposed class action is maintainable under Federal Rule of Civil Procedure 23(b)(2). Defendants have acted on grounds generally applicable to the proposed class by adhering to the practice of annexing Fitness Reports to the Notification of Fitness to Proceed forms and filing them with the courts. Defendants' actions make plaintiffs' request for injunctive and declaratory relief with respect to the class as a whole appropriate. *See Marisol A.*, 126 F.3d at 378; *Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir.1994) (Rule 23(b)(2) satisfied where "the plaintiffs seek injunctive relief and they predicate the lawsuit on the defendants' acts and omissions with respect to" the class); Advisory Committee Note to Subdivision

(b)(2) ("Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.")

■ The proposed class action is also maintainable under Fed.R.Civ.P. 23(b)(3). The common questions of law and fact, discussed in connection with the commonality and typicality requirements, predominate over questions only affecting individual members. *See* Fed.R.Civ.P. 23(b)(3). This lawsuit centers around defendants' practice regarding Fitness Reports and the types of information contained therein; the specific facts regarding each plaintiff contained in those reports are secondary. Moreover, given the size and fluid nature of the class, "a class action is superior to other available methods for the fair and efficient adjudication of the controversy," Fed.R.Civ.P. 23(b)(3). Additionally, because of the transitory nature of the class members, class certification will avoid any mootness issues that could otherwise arise if an individual's claims became moot. *See Robidoux*, 987 F.2d at 938–39 ("Where class claims are inherently transitory, 'the termination of a class representative's claim does not moot the claims of the unnamed members of the class.'") (quoting *Gerstein v. Pugh*, 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 861 n. 11, 43 L.Ed.2d 54 (1975)). Accordingly, this Court finds that plaintiff has met the requirements of Rule 23 for class certification.

### D. *Necessity*

■ Defendants argue that class certification is a mere formality unnecessary in this case because they have promised to treat all patients in an identical manner based on the outcome of this action. *See* Smith Aff. ¶ 37; *Berger v. Heckler*, 771 F.2d 1556, 1566 (2d Cir.1985); *Galvan v. Levine*, 490 F.2d 1255, 1261 (2d Cir.1973).

This Court disagrees that class certification is a mere formality. According to plaintiffs, "there is routinely only a period of several weeks between the time a member of the plaintiff class is found fit to proceed and defendants file a report with the court containing such plaintiff's confidential medical and psychiatric information; under any set of circumstances there is an insufficient period of time for a final determination to be made by any court." (Pls.' Br. at 15–16) Thus, unlike the cases cited by defendants, this case involves a fluid class where the claims of the named plaintiffs are likely to become moot prior to completion of this litigation. *See Greklek v. Toia*, 565 F.2d 1259, 1261 (2d Cir.1977) (class certification necessary in action requesting declaratory and injunctive relief "since only class certification could avert the substantial possibility of the litigation becoming moot prior to the decision"); *Alston v. Coughlin*, 109 F.R.D. 609, 612 (S.D.N.Y.1986) ("[t]he plaintiff's interest in averting the possibility of the action becoming moot, with the concomitant interest in judicial economy, makes class certification in this case more than an empty formality"); *Jane B. v. New York City Department of Soc. Servs.*, 117 F.R.D. 64, 72 (S.D.N.Y.1987) ("[a]n additional reason for granting the motion for certification lies in avoiding problems of mootness"); *Koster v. Perales*, 108 F.R.D. 46, 54 (E.D.N.Y.1985) (class certification is necessary when "absent certification, there is a substantial danger of mootness"). Accordingly, because plaintiffs have fulfilled each of the requirements for maintaining a class action, their motion for class certification is granted.

### E. *Certified Class*

Plaintiffs propose that the class consist of "all incapacitated criminal defendants who are currently confined to Mid–Hudson, or who will be confined to Mid–Hudson, for purpose[s] of care and treatment, and who will be returned to the local criminal courts as fit to proceed." (Compl.¶ 67) Plaintiffs seek to certify the class only for purposes of obtaining declaratory and injunctive relief for the federal claims and not for purposes of obtaining damages for the federal and state claims. This Court has authority to allow a class action to be maintained with respect to particular issues and not others. *See* Fed. R.Civ.P. 23(c)(4) ("an action may be maintained as a class action with respect to particular issues").

Defendants claim that if the Court does certify a class, "it should be limited to only those patients who have not themselves placed their capacity at issue. Those patients who voluntarily place their capacity at issue have waived their right to privacy." (Defs.' Br. at 24) (citing *Doe v. City of New York*, 15 F.3d 264, 269 (2d Cir.1994)). This Court disagrees with defendants and finds their reliance on *Doe* puzzling. In *Doe*, the Second Circuit rejected the proposition defendants are now asserting. The *Doe* Court made clear that a plaintiff does not lose his privacy right when defendants choose to place his personal information in a public record. *See Doe*, 15 F.3d at 269.

Accordingly, this Court grants plaintiffs' motion to certify as a class for purposes of obtaining declaratory and injunctive relief for the federal claims all incapacitated criminal defendants who are currently confined to Mid–Hudson, or who will be confined to Mid–Hudson, for purposes of care and treatment, and who will be returned to the local criminal courts as fit to proceed.

## II. *Preliminary Injunction*

### A. *Applicable Standards*

■ A preliminary injunction is "an extraordinary remedy which should not be granted unless the moving party has made a clear showing of entitlement to such relief." *Conopco, Inc. v. Cosmair, Inc.*, 49 F.Supp.2d 242, 247 (S.D.N.Y.1999) (citing *Jayaraj v. Scappini*, 66 F.3d 36, 38–39 (2d Cir.1995)); *accord Medical Soc'y of the State of New York v. Toia*, 560 F.2d 535, 538 (2d Cir.1977) (preliminary injunctive relief is "an extraordinary and drastic remedy which should not be routinely granted"). In order to obtain a preliminary injunction to prevent government action allegedly taken pursuant to statutory authority, plaintiffs must establish that absent injunctive relief, they will suffer irreparable harm, and that they are likely to succeed on the merits. *See Statharos v. New York City, Taxi & Limousine Comm'n*, 198 F.3d 317, 321 (2d Cir.1999) (citing *Molloy v. Metropolitan Transp. Auth.*, 94 F.3d 808. 811 (2d Cir.1996)); *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 43 (2d Cir.1999). Plaintiffs meet this standard.

### B. *Irreparable Harm*

■ The single most important prerequisite for issuance of a preliminary injunction is a "demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Jayaraj*, 66 F.3d at 39 (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir.1985)). Irreparable harm is "injury for which a monetary award cannot be adequate compensation." *Jayaraj*, 66 F.3d at 39 (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)). The mere possibility of harm is not sufficient; the harm must be imminent and the movant must show it is likely to suffer irreparable harm if equitable relief is denied. *See Borey v. National Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir.1991); *JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990); *Reuters Ltd. v. United Press Intern., Inc.*, 903 F.2d 904, 907 (2d Cir.1990).

Plaintiffs contend that defendants' "unauthorized disclosure of plaintiffs' confidential psychiatric and medical information" in violation of their constitutional rights constitutes irreparable harm. (Am.Compl.¶¶ 180, 193, 231) The Fitness Reports, which plaintiffs allege are being publicly filed, contain information revealed by their treating physicians relating to plaintiffs' medical histories, HIV status, substance abuse, and other intimate details of their personal lives. *See O.J. Aff. Ex. A., M.P. Aff. Ex. A, J.M. Aff. Ex. B, and J.R. Aff. Ex. B.

■ Much of the information in the Fitness Reports falls within the "constitutionally protected zone of privacy." *Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977). The right to privacy is grounded in the Fourteenth Amendment's concept of personal liberty, *see Whalen*, 429 U.S. at 599 n. 23, 97 S.Ct. at 876 n. 23 (citing *Roe v. Wade*, 410 U.S. 113, 152, 93 S.Ct. 705, 726–27, 35 L.Ed.2d 147 (1973)), and encompasses the "individual interest in avoiding disclosure of personal matters." *Whalen*, 429 U.S. at 599, 97 S.Ct. at 876; *accord Statharos*, 198 F.3d at 322.

The Second Circuit has specifically recognized the right to confidentiality of personal medical information, which is explored in detail in the Fitness Reports. In *Doe v. City of New York*, 15 F.3d 264 (2d Cir.1994), the Second Circuit held that "the right to confidentiality includes the right to protection regarding information about the state of one's health." *Doe*, 15 F.3d at 267. The Circuit explained that "[i]nformation about one's body and state of health is [a] matter which the individual is ordinarily entitled to retain within the private enclave where he may lead a private life." *Doe*, 15 F.3d at 267 (quoting *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir.1980)) (internal quotation marks omitted).

The Circuit has recently held that inmates are afforded constitutional protections against unwarranted disclosure of medical information. *See Powell v. Schriver*, 175 F.3d 107, 111–13 (2d Cir.1999); *accord Taylor v. Macomber*, No. 97 Civ. 4127(DAB), 1999 WL 349696, at *2–3 (S.D.N.Y. May 27, 1999); *Colon v. Arrabito*, No. 97 Civ. 7146(HB), 1998 WL 305636, at *3 (S.D.N.Y. June 9, 1998); *Clarkson v. Coughlin*, 898 F.Supp. 1019, 1041 (S.D.N.Y.1995). Criminal defendants who have not yet been convicted are entitled to at least the same level of constitutional protections as sentenced inmates. *See generally Jackson v. Indiana*, 406 U.S. 715, 729–30, 92 S.Ct. 1845, 1854, 32 L.Ed.2d 435 (1972) ("we cannot conclude that pending criminal charges provide a greater justification for different treatment than conviction and sentence"); *Gomez v. Miller*, 341 F.Supp. 323, 330 (S.D.N.Y.1972) ("Defendants accused but not yet convicted of crime should be treated as civil patients.... [A] citizen loses none of his rights simply because he has been accused") (quoting Report of the Special Committee on the Study of Commitment Procedures cited with approval in *U.S. ex rel. Schuster v. Herold*, 410 F.2d 1071, 1078 (2d Cir.1969)).

A number of the named plaintiffs' Fitness Reports also contain information regarding their HIV status. The confidentiality protection of medical records "is at its zenith in the context ... of a person's HIV status." *Pow-*

*ell*, 175 F.3d at 111. As the Second Circuit has observed:

> [A]n individual's choice to inform others that she has contracted what is at this point invariably and sadly a fatal, incurable disease is one that she should normally be allowed to make for herself. This would be true for any serious medical condition, but is especially true with regard to those infected with HIV or living with AIDS, considering the unfortunately unfeeling attitude among many in this society toward those coping with the disease. An individual revealing that she is HIV seropositive potentially exposes herself not to understanding and compassion but to discrimination and intolerance, further necessitating the extension of the right to confidentiality over such information.

*Doe*, 15 F.3d at 267.

Further, at least one Fitness Report includes information that the plaintiff considers himself bi-sexual. Courts recognize a privacy interest in sexual orientation and preference. *See, e.g., Powell v. Schriver*, 175 F.3d 107 (2d Cir.1999) ("the excruciatingly private and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter, is really beyond debate"); *Bloch v. Ribar*, 156 F.3d 673, 685 (6th Cir. 1998) ("[p]ublicly revealing information regarding [sexuality and choices about sex] exposes an aspect of our lives that we regard as highly personal and private"); *Eastwood v. Department of Corrections*, 846 F.2d 627, 631 (10th Cir.1988) (right to privacy "is implicated when an individual is forced to disclose information regarding personal sexual matters"); *Thorne v. City of El Segundo*, 726 F.2d 459, 468 (9th Cir.1983) ("The interests [plaintiff] raises in the privacy of her sexual activities are within the zone of privacy protected by the [C]onstitution."); *see generally Carey v. Population Servs. Int'l*, 431 U.S. 678, 684, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977) (privacy right in decisions relating to contraception); *Eisenstadt v. Baird*, 405 U.S. 438, 453–54, 92 S.Ct. 1029, 1038–39, 31 L.Ed.2d 349 (1972) (same).

Finally, the Fitness Reports are based on information the patient provides to his or her therapist. The Supreme Court

has recognized the sensitive nature of material revealed during such discourse.

> Effective psychotherapy ... depends upon an atmosphere of trust and confidence in which the patient is willing to make frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.

*Jaffee v. Redmond,* 518 U.S. 1, 10, 116 S.Ct. 1923, 1928, 135 L.Ed.2d 337 (1996) (recognizing federal privilege protecting confidential communications between psychotherapist or licensed social worker and her patient). Other courts have found similar privacy interests in therapist-patient communications. *See, e.g., Taylor v. United States,* 222 F.2d 398, 401 (D.C.Cir.1955) (it is unrealistic to expect patients to be open with their therapists "if they knew all that they say—and all that the psychiatrist learns from what they say—may be revealed to the whole world"); *Hawaii Psychiatric Soc'y v. Ariyoshi,* 481 F.Supp. 1028, 1052 (D.Hawai'i 1979) ("[t]his right to choose confidentiality is particularly crucial in the context of communications between patient and psychotherapist"); *Lora v. Board of Educ.,* 74 F.R.D. 565, 571 (E.D.N.Y.1977) (claim of privacy "is particularly compelling when the material to be disclosed includes communications by a patient to a psychotherapist").

■ Public disclosure of highly personal and confidential information, the likes of which are at issue in this case, result in a harm that is both substantial and irreversible. *See Plante v. Gonzalez,* 575 F.2d 1119, 1135 (5th Cir.1978) ("[w]hen a legitimate expectation of privacy exists, violation of privacy is harmful without any concrete consequential damages"). The harm at issue here—disclosure of confidential information—is the quintessential type of irreparable harm that cannot be compensated or undone by money damages. *See Hawaii Psychiatric*

*Soc'y,* 481 F.Supp. at 1052 (disclosure of highly personal information in psychiatrist's files constitutes irreparable harm). The harm caused by the disclosure of the confidential information in the Fitness Reports is imminent and not merely speculative. Indeed, it has been disclosed in each individual plaintiff's case. Accordingly, plaintiffs have met the irreparable injury requirement for preliminary injunctive relief.

### C. Likelihood of Success on the Merits

#### 1. Eleventh Amendment

■ Defendants contend that plaintiffs cannot show they are likely to succeed on the merits because this action is barred by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. An unconsenting state is immune from suits in federal court brought by its own citizens, *see Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974), and such immunity extends to state agencies and officers who act on behalf of the state. *See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144–47, 113 S.Ct. 684, 687–89, 121 L.Ed.2d 605 (1993).

■ However, the Supreme Court has recognized an important exception to state immunity: "a suit challenging the constitutionality of a state official's action is not one against the state." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 102, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984) (citing *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)); *accord Burnette v. Carothers,* 192 F.3d 52, 57 n. 3 (2d Cir.1999). In *Ex Parte Young,* the Court held that Eleventh Amendment immunity dissolves when state officials act in violation of federal law; in those circumstances the officials are acting in an unauthorized manner and are stripped of their official character and sub-

ject to the consequences of their conduct. *See Ex parte Young,* 209 U.S. at 160, 28 S.Ct. at 454; *accord Pennhurst,* 465 U.S. at 102, 104 S.Ct. at 909. The principle enunciated in *Ex Parte Young* is limited to prospective injunctive relief. *See Pennhurst,* 465 U.S. at 102–03, 104 S.Ct. at 909 (citing *Edelman,* 415 U.S. at 666–67, 94 S.Ct. at 1357–58) ("when a plaintiff sues a state official alleging violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief").

■ Here, plaintiffs request for a preliminary injunction is predicated on defendants' alleged constitutional deprivation of plaintiffs' "right to privacy guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution by the unauthorized disclosure of plaintiffs' confidential psychiatric and medical information." (Compl.¶¶ 180, 193, 231) Plaintiffs only request prospective injunctive relief against defendants "enjoining them from revealing confidential clinical information regarding incapacitated criminal defendants without any legal authority upon a finding that the incapacitated defendant has regained the fitness to proceed to trial." (Compl. · Relief Requested (e)) This is precisely the type of injunction permitted by *Ex parte Young.*

### 2. *Abstention*

■ Defendants also contend that plaintiffs cannot show they are likely to succeed on the merits because the preliminary injunctive relief sought violates the abstention doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Abstention is "the basic doctrine of jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law." *Younger,* 401 U.S. at 43, 91 S.Ct. at 750; *accord Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). The *Younger* abstention doctrine has been extended to pending civil proceedings where the "State's interests in the proceeding are so important that the exercise of the judicial power would

disregard the comity between the States and the ·National Government." *Pennzoil,* 481 U.S. at 10, 107 S.Ct. at 1526.

■ *Younger* abstention is only appropriate when each of the following three requirements are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated; and (3) the plaintiff has an open avenue of review of constitutional claims in the state court. *See Hansel v. Town Court for the Town of Springfield,* 56 F.3d 391, 393 (2d Cir.), *cert. denied* 516 U.S. 1012, 116 S.Ct. 572, 133 L.Ed.2d 496 (1995). Defendants contend that these three requirements are met, and therefore, this Court should abstain from issuing plaintiffs' requested preliminary injunction.

Abstention from exercise of federal jurisdiction is the exception, not the rule.

> The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.

*Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)).

■ This Court is unconvinced that the third requirement for abstention, an opportunity for the constitutional claims to be reviewed in the state court proceeding, is met. Plaintiffs' challenge involves issues related to their psychiatric treatment and right to confidentiality, which cannot be raised as a defense to the underlying criminal prosecution itself. In fact, the challenge can best be described as ancillary to the merits of the prosecution. Plaintiffs' challenge is similar to that made in *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), where the Court held that the district court

correctly declined to invoke the *Younger* abstention doctrine because "[t]he injunction was not directed at the state prosecutions as such, but only at the legality of . . . an issue that could not be raised in defense of the criminal prosecution." *Gerstein,* 420 U.S. at 108 n. 9, 95 S.Ct. at 860 n. 9. Accordingly, like the district court in *Gerstein,* this Court declines to invoke the *Younger* abstention doctrine.

### 3. *Balancing Test*

 While much of the information contained in the Fitness Reports is protected by plaintiffs' privacy rights derived from the Fourteenth Amendment, *see supra* Discussion Section II. B, plaintiffs' privacy rights are not absolute. Laws or policies "impinging upon the plaintiffs' interests in nondisclosure should be subjected to an intermediate standard of review." *Eisenbud v. Suffolk County,* 841 F.2d 42, 45 (2d Cir.1988) (citing *Barry v. City of New York,* 712 F.2d 1554, 1559 (2d Cir.1983)). A law or policy allowing for dissemination of protected information will be constitutional only if it seeks to vindicate "a substantial government purpose." *Eisenbud,* 841 F.2d at 45 (citing *Barry,* 712 F.2d at 1560); *see also Statharos,* 198 F.3d at 323 (confidentiality interests are not absolute and "can be overcome by a sufficiently weighty government purpose"); *Doe,* 15 F.3d at 269 (the government interest in disseminating information must be substantial "and must be balanced against [plaintiff's] right to confidentiality"). In weighing plaintiffs' privacy interests against defendants' competing interest in disclosure, the following factors should be considered: (1) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access; (2) the type of record requested; (3) the injury from disclosure to the relationship in which the record was generated; (4) the information the record does or might contain; (5) the degree of need for access; and (6) the adequacy of safeguards to prevent unauthorized disclosure. *See Westinghouse Electric Corp.,* 638 F.2d at 578 (cited in *Doe,* 15 F.3d at 267).

### a. *State Interest*

 Defendants allege that dissemination of the information in the Fitness Reports is permitted by state law and is otherwise justified. Defendants argue that "the strong [state] interest in accurate, informed determinations of a criminal defendant's fitness to proceed to trial clearly outweighs and justifies the limited disclosure of information at issue here." (Defs.' Br. at 11) Dr. Smith, the Director of Clinical Services at Mid–Hudson, claims it is "necessary to provide the court with the relevant data that provides the basis for the opinion" that the defendant is fit to proceed. (Smith Aff. ¶ 15) Smith contends that it would be insufficient to merely complete the Notification of Fitness to Proceed form, "because that does not provide the court with any means to evaluate the examiner's logical analysis and whether there was a sufficient basis for that opinion." (Smith Aff. ¶ 11) Although this Court recognizes that the state has a strong interest in accurate judicial determinations of fitness, as discussed below, the Fitness Reports reveal far more information than is required by any court. On examination of each of the above-mentioned factors, this Court finds that the government's interest in disseminating the personal information in the Fitness Reports does not outweigh plaintiffs' interests in keeping such information private.

### b. *New York Law*

Defendants contend that the Fitness Reports are permitted, although not required, by New York law. (Oral Arg. Jan. 14, 2000 at 18) On the other hand, plaintiffs allege that the Fitness Reports are submitted in violation of numerous New York statutes.

This Court agrees with plaintiffs that CPL § 730 does not permit "Fitness Reports" as they currently exist. CPL § 730.60 provides for a Notification of Fitness to Proceed form; it does not specify that an explanatory report be attached to the form. Even if this Court believed, *arguendo,* that a report regarding the defendant's fitness could be annexed to the Notification of Fitness to Proceed form, the Fitness Reports are not prepared in accordance with reports under CPL § 730. Defendants contend that the Fitness Reports

are really Examination Reports. (Oral Arg. Jan. 14, 2000 at 19–20) However, the Fitness Reports differ from the statutorily authorized Examination Reports in the following ways: (1) they are not issued pursuant to an examination order as required by CPL § 730.20(1); (2) they are not issued in pairs as required by CPL § 730.20(1); (3) they are not issued on the statutorily mandated form as required by CPL § 730.10(8); (4) they are issued by treating therapists and not by court-appointed psychiatrists or psychologists as required by CPL § 730.20; and (5) they include information which would not be contained in a properly executed Examination Report, which in the case of a defendant who is fit to proceed, only contains an opinion that the defendant is fit and the nature and extent of the examination, and not information relating to medical conditions, HIV status, or personal sexual matters. *See* CPL § 730.10.

Defendants' reliance on MHL § 33.13 as authorizing dissemination of private information in the Fitness Reports is without merit. MHL § 33.13 forbids state psychiatric facilities like Mid–Hudson from releasing their patients' medical records except under specifically enumerated circumstances. None of those circumstances exists in this case, including the one relied upon by defendants—release by treating psychiatrist to an endangered individual and law enforcement agency when he has determined that a patient represents a serious danger to an individual. *See* MHL § 33.13(c). Fitness Reports are released to the court and the prosecutor, not to an endangered individual or law enforcement agency. Moreover, the reports submitted to this Court contain no allegations that the criminal defendant presented an imminent danger to a particular individual.

PHL § 2782 also does not sanction the release of private information in the Fitness Reports. PHL § 2782 requires that HIV information be kept confidential and can only be disclosed under specifically enumerated circumstances. Again, this Court finds that none of these exceptions is applicable. Even if PHL § 2782 were applicable, defendants have not been following the notice and sealing requirements required by state law. *See* PHL § 2785.

### c. *Type of Record and Injury To Relationship From Disclosure*

The Fitness Reports contain confidential information obtained during the course of plaintiffs' psychological treatment. (Compl.¶¶ 80–81) As discussed above, courts have recognized the extremely sensitive nature of material revealed by a patient to his therapist. *See supra* Discussion Section II. B. Thus, plaintiffs have a strong privacy interest in records prepared by their *treating* therapists. Courts have unequivocally recognized the need for trust and open communication in order for psychological therapy to be successful and that disclosure of information gained from the relationship may impede people from seeking treatment. *See supra* Discussion Section II. B. There is substantial danger that disclosure of a treating therapist's notes about his patient via the Fitness Reports will significantly undermine the patient-therapist relationship. Each of the named plaintiffs have attested that if they had known that personal information divulged during treatment would be publicly filed in Fitness Reports, they would have been hesitant to accept the treatment offered by Mid–Hudson. (O.J. Aff. ¶¶ 6–7; M.P. Aff. ¶¶ 9–10; J.M. Aff. ¶¶ 8–9; J.R. Aff. ¶¶ 7,9)

Defendants' practice turns the rehabilitative therapist-patient relationship envisioned by CPL § 730 on its head by enlisting the treating therapist as a prosecutorial agent. The harm flowing from such a practice is particularly serious because it undermines the purpose behind institutionalizing the incapacitated criminal defendant—providing psychiatric treatment. CPL § 730 specifically creates the independent evaluation mechanism to separate the treatment of the criminal defendant and the evaluation of his capacity to stand trial. Defendants are impermissibly merging these potentially conflicting roles.

### d. *Information Contained in Fitness Reports*

Each of the named plaintiffs' Fitness Reports contains personal information, includ-

ing information such as HIV status, sexual matters, medical status, and family histories. Defendants contend that the Fitness Reports only contain information that is necessary to determine fitness, (Smith Aff. ¶¶ 10–15), and that the inclusion of HIV-related information is "an inadvertent error," unless it relates directly to the determination of fitness. (Smith Aff. ¶¶ 16–17)

The Supreme Court has stated that the constitutional test for competency to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him. *See, e.g., Godinez v. Moran,* 509 U.S. 389, 396, 113 S.Ct. 2680, 2685, 125 L.Ed.2d 321 (1993); *Drope v. Missouri,* 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975); *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960); *accord United States v. Morrison,* 153 F.3d 34, 46 (2d Cir.1998); *United States v. Nichols,* 56 F.3d 403, 410 (2d Cir.1995); *Newfield v. United States,* 565 F.2d 203, 206 (2d Cir.1977). It is the trial court that makes a competency determination, and the court may rely on a number of factors, including medical opinions and the court's own observations of the defendant's conduct. *See Morrison,* 153 F.3d at 46; *Nichols,* 56 F.3d at 411.

Defendants' contention that the state courts rely on all of the personal information in the Fitness Reports is belied by state court opinions. For example, in *People v. Picozzi,* 106 A.D.2d 413, 414, 482 N.Y.S.2d 335, 337 (2d Dep't 1984), the Second Department listed the factors a court should consider in determining competency, which are whether the defendant: (1) is oriented as to time and space; (2) can perceive, recall and relate; (3) has at least a rudimentary understanding of the process of trial and the roles of the judge, jury, prosecutor and defense attorney; (4) can establish a working relationship with his attorney; (5) possesses sufficient intelligence and judgment to listen to the advice of counsel and, based on that advice, appreciate (without necessarily choosing to adopt it) that one course of conduct may be more beneficial to him than another; and (6) is sufficiently stable to withstand the stresses of the trial without suffering a serious, prolonged or permanent breakdown. *Accord People v. Valentino,* 78 Misc.2d 678, 356 N.Y.S.2d 962 (Nassau County Ct.1974). The information in the Fitness Reports contested by plaintiffs does not shed light on any of these considerations.

Although defendant Smith broadly asserts that all information in the Fitness Reports is necessary to the court's determination of fitness, (Smith Aff. ¶ 10–15), neither he nor the Fitness Reports themselves connect the contested information to capacity determination. The fact that a criminal defendant is HIV positive and bisexual, was physically abused 14 years earlier, takes HIV related medication and suffers from hepatitis and diabetes, or has siblings who served time in prison, is not essential information which a court must have before determining that defendant has sufficient ability to consult with his lawyers or to understand the proceedings against him.

#### e. *Degree of Need for Access*

Defendants contend that submission of the Notification of Fitness to Proceed form alone would be insufficient for a court to make a capacity determination. (Smith Aff. ¶¶ 10–15) The Court rejects that argument. Putting aside the fact that much of the detail provided in the reports is surplusage with no direct bearing on capacity to stand trial, *see supra* . Discussion Section II.C.3.d., trial courts have other resources to draw on in making a capacity determinations. The trial court may observe and question a defendant, much like it may have done when it decided to issue the original order of examination. If the court, or any of the parties, questions the defendant's capacity, the court may order a new round of Examination Reports, which are prepared by pairs of appointed psychological examiners and *not* treating therapists. *See* CPL § 730.20. The court may authorize a psychologist or psychiatrist retained by defendant to be present at such examination. *See* CPL § 730.20. The trial court may also hold a hearing regarding capacity. *See* CPL § 730.30. At such hearing, the defendant would have a right to introduce independent

expert testimony. *See People v. Christopher,* 65 N.Y.2d 417, 423–26, 492 N.Y.S.2d 566, 569–71, 482 N.E.2d 45 (1985). While such procedures may lack the pure expediency of a tell-all report, capacity hearings or Examination Reports are likely to yield far more useful information while simultaneously providing the safeguards and fairness of the adversarial process.

Defendants' reliance on *People v. Lowe,* 109 A.D.2d 300, 491 N.Y.S.2d 529 (4th Dep't 1985) for the proposition that the information contained in Fitness Reports must be presented to trial courts is misplaced. In that case, the court held that because the state substantially deviated from the requirements for Examination Reports under CPL § 730, the criminal defendant was denied his right to a full and impartial determination of mental capacity. *Lowe,* 109 A.D.2d at 304–06, 491 N.Y.S.2d at 533–35. For example, instead of using the Examination Report form, the psychiatrist merely wrote a letter, which failed to state that he was qualified and failed to describe the nature and extent of the examination. Rather than reading the *Lowe* decision as requiring submission of Fitness Reports, this Court reads the decision as requiring strict compliance with CPL § 730 and use of the approved forms.

### f. Adequacy of Safeguards

Defendants contend that there are adequate safeguards to prevent widespread dissemination of the Fitness Reports. Specifically, defendants claim that the Fitness Reports are stamped "Confidential" and are only disclosed to the trial court and to MHLS. (Smith Aff. ¶ 7–8) Defendants argue that if Fitness Reports are being placed in public court files, "such improper filing[s] would not be the responsibility of defendants, who have no control over the maintenance of court files." Defs.' Br. at 17; *see also* Oral Arg. Jan. 14, 2000 at 23–24.

The security mechanisms protecting plaintiffs' confidential information appear to be inadequate. Plaintiffs have alleged, and Hirschfeld has sworn, that defendants have a practice of publicly filing unsealed Fitness Reports in triplicate with the court system when a Mid–Hudson patient has regained capacity to proceed. (Hirschfeld Aff. ¶ 4; Compl. ¶ 89) Once filed with the court, the information is accessible to the public at large.

Mid–Hudson's internal safeguards also appear to be insufficient. Defendants contend that "[i]t is Mid–Hudson's policy to remove any and all references to HIV status, or related medication, from the fitness report before it is submitted to the court, unless the HIV diagnosis directly pertains to the determination of fitness." (Smith Aff. ¶ 16) However, defendants admit that some HIV-related information that should not be disclosed to anyone is making its way into fitness reports due to "inadvertent error" (Smith Aff. ¶ 17) The fact that HIV-related information is contained in two of the four Fitness Reports presented to this Court appears to indicate that inclusion of such information is more endemic than defendants would like this Court to believe.

### 4. Scope of Injunction

Based on the foregoing analysis, this Court finds plaintiffs have demonstrated that their privacy interests in the information in the Fitness Reports outweigh defendants' state interests in dissemination. Therefore, plaintiffs have shown that they are likely to succeed on the merits.

Accordingly, plaintiffs' motion for preliminary injunction is granted. Because the Fitness Reports are not standardized, it is impossible for this Court to issue an injunction permitting certain categories of information and prohibiting others. This Court also rejects the suggestion that it should require defendants to file the Fitness Reports under seal, since such a procedure would not alleviate the harm to the patient-therapist relationship spawned by the reports. Instead, defendants are enjoined from attaching Fitness Reports to the Notification of Fitness to Proceed forms given to the relevant trial courts, defense attorneys or district attorneys. Defendants may only notify those courts and attorneys of a criminal defendant's fitness to proceed to trial by using the Notification of Fitness to Proceed form.

### III. *Sealing Order*

Plaintiffs request an order sealing all documents in this case that identify plaintiffs by their full names. Defendants do not oppose plaintiffs' motion for a sealing order. (Defs. Br. at 2)

This Court agrees that such a limited sealing order is appropriate. Although there is a presumption of access to federal courts, *see In re Orion Pictures Corp.*, 21 F.3d 24, 26 (2d Cir.1994), plaintiffs have met their burden of demonstrating that absolute access should yield to countervailing interests. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598–99, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978). First, the documents at issue contain extremely sensitive information, including medical and sexual information, which are afforded privacy protection. *See supra* Discussion Section II. B. Second, plaintiffs' request is extremely limited; they only request that documents which reveal their identities be sealed. The public will still have access to information in this action via documents that reveal plaintiffs only by their initials.

Accordingly, plaintiff's motion for a sealing order is granted. If the parties believe any documents should be sealed in accord with this order, they are directed to send a letter request to this Court with the documents attached. This Court will review such documents and, if appropriate, seal and cause them to be filed with the Clerk of this Court.

### Conclusion

For the reasons set forth above, plaintiffs' motions for class certification, for a preliminary injunction and for a sealing order are granted in their entirety.

The parties are directed to appear for a pretrial conference on May 18, 2000 at 3:30 p.m. in Courtroom 618.