15 F.3d 264
 63 Fair Empl.Prac.Cas. (BNA) 1117,
63 Empl. Prac. Dec. P 42,819, 62 USLW 2496,
9 Indiv.Empl.Rts.Cas. (BNA) 360,
22 Media L. Rep. 1246
 In the Matter of the Claim of John DOE (this name being
fictitious), Plaintiff-Appellant,
v.
The CITY OF NEW YORK; The City of New York Commission on
Human Rights; Dennis DeLeon, as Commissioner/Chair of the
City of New York Commission on Human Rights and Individually
and Karen Arthur, as an employee of the City of New York
Commission on Human Rights and Individually, Defendants-Appellees.
 No. 527, Docket 93-7596.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 3, 1993.
Decided Jan. 28, 1994.
 
 Marla Hassner, Chadbourne & Park, New York, N.Y., for plaintiff-appellant.
 Elaine Rothenberg, Corporation Counsel of the City of New York (O. Peter Sherwood, Larry A. Sonnenshein, and Neil M. Corwin, Corporation Counsel of the City of New York, of counsel), for defendant-appellee.
 Before: OAKES, KEARSE, and ALTIMARI, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 Plaintiff-appellant John Doe, so identified in order to protect his privacy and anonymity, appeals from a judgment of the United States District Court for the Southern District of New York (Griesa, J.) dismissing his civil rights complaint brought under 42 U.S.C. Sec. 1983 (1988) 825 F.Supp. 36. Doe brought the action against the defendant-appellees City of New York, the City of New York Commission on Human Rights (the "Commission"), and certain employees of the city and of the Commission. Doe alleged that the defendant-appellees (collectively herein the "city") violated his constitutional right to privacy by revealing to the public the details of a conciliation agreement settling a discrimination complaint lodged against Delta Air Lines, Inc. ("Delta") by Doe with the Commission. Doe argued that this disclosure by the city, made pursuant to city law, caused him to be the victim of discrimination and resulted in severe embarrassment and ostracism. He alleged a violation of his constitutional right to privacy, actionable under 42 U.S.C. Sec. 1983, and also raised various pendent state claims.
 
 
 2
 The district court dismissed the complaint on the city's motion for dismissal pursuant to Fed.R.Civ.P. 12(b)(6), finding that the settlement was a public record in which there could be no reasonable expectation of privacy. After finding that there was no constitutional violation, the court also dismissed the remaining pendent state claims for lack of federal jurisdiction. Doe now appeals, arguing that the district court erred in finding that the settlement was inherently a public record as a matter of law. For the reasons stated below, we agree, and we reverse the judgment of the district court and remand for proceedings consistent with this opinion.
 
 BACKGROUND
 
 3
 In the summer of 1989, Doe learned that he was infected with the Human Immunodeficiency Virus ("HIV"), the virus that eventually causes Acquired Immune Deficiency Syndrome ("AIDS"). According to Doe, his HIV status was an intensely personal matter which he did not share even with his family, his friends, or his colleagues at work for fear of ostracism and discrimination. Also according to Doe, the only people he informed about his condition were his medical doctor, his attorney, and the individuals involved in the prosecution of this lawsuit.
 
 
 4
 Doe was an employee of Pan American World Airways ("Pan Am") during the time of Pan Am's 1991 bankruptcy and Delta's acquisition of many of Pan Am's services. Doe, along with thousands of other former Pan Am employees, interviewed with Delta for a position. He was not offered one. On February 10, 1992, Doe filed a complaint with the Commission against Delta, charging that Delta had failed to hire him because he was a single gay male and because of Delta's suspicion that Doe was HIV seropositive.
 
 
 5
 On August 3, 1992, the Commission, Delta, and Doe entered into a "Conciliation Agreement" ("the agreement," "the settlement," or "the Conciliation Agreement") settling Doe's claims against Delta. Pursuant to the terms of the agreement, Delta hired Doe as a customer services agent. The agreement also awarded Doe back pay, seniority privileges, and a monetary settlement. Because of the sensitive nature of Doe's situation, the agreement included the following confidentiality clause:
 
 
 6
 Except as required by any court or agency or upon the written consent of Doe or his attorney, Delta and the [Commission's Law Enforcement] Bureau agree not to disclose Doe's given name through any oral or written communication which identifies Doe by his given name as the plaintiff in this lawsuit or as a settling party to this Conciliation Agreement to any person that is not a party to or involved with this proceeding.
 
 
 7
 Despite the above confidentiality clause, on August 6, 1992 the Commission issued a press release disclosing the terms of the Conciliation Agreement, without the knowledge or consent of Doe or Doe's counsel. On August 7 and 8, 1992, various New York newspapers published articles based upon the press release, describing the nature of the settlement. Although the press release did not expressly identify Doe by his given name, Doe alleges that it did contain sufficient information to allow those who knew or worked with Doe to identify him as the individual described in the release. Doe contends that, as a result of the press coverage, his colleagues at Delta became aware of his HIV status, causing him to suffer discrimination and embarrassment at work as well as the emotional manifestation of extreme anxiety.
 
 
 8
 Doe subsequently commenced the present action under 42 U.S.C. Sec. 1983, alleging that the Commission breached his constitutional right to privacy by non-consensually disclosing his HIV status to the public in the press release. Asserting supplemental jurisdiction, Doe also claimed, among other things, that the press release breached the terms of the Conciliation Agreement, constituting a breach of contract.
 
 
 9
 In an opinion dated June 14, 1993, the district court granted the city's motion to dismiss the complaint for failure to state a claim upon which relief could be granted. The court found that Doe's HIV status had been made a matter of public record once Doe filed a complaint with the Commission. The Court cited to the Administrative Code of the City of New York, Sec. 8-115(d) (Cum.Supp.1991) ("Administrative Code"), which provides that "[e]very conciliation agreement shall be made public unless the complainant and respondent agree otherwise and the commission determines that disclosure is not required to further the purposes of this chapter." Based on this provision, the district court further opined:
 
 
 10
 Plaintiff's proceeding before the Commission and the resulting conciliation agreement would have been a matter of public record but for the non-disclosure provision of the agreement. The constitutional right to privacy does not extend to matters of public record. See Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 494-495, 95 S.Ct. 1029, 1045-1047, 43 L.Ed.2d 328 (1975); Scheetz v. The Morning Call, Inc., 946 F.2d 202, 207 (3d Cir.1991). Whatever right of confidentiality plaintiff had came from the contract he entered into with Delta and the Commission, and stems from the contract not the Constitution. There is a difference of view among the parties as to the proper interpretation of the contract. What needs to be litigated here is the issue of contract interpretation [under state law].
 
 
 11
 Based on the above reasoning, Doe's cause of action under Sec. 1983 was dismissed and the remaining state causes of action were dismissed due to lack of subject matter jurisdiction. Doe now appeals, arguing that the district court erred in finding that his HIV status was a matter of public record.
 
 DISCUSSION
 
 12
 We review the district court's dismissal of the Doe's complaint under Fed.R.Civ.P. 12(b)(6) de novo. See Grimes v. Ohio Edison Co., 992 F.2d 455, 456 (2d Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993). On this review, we must "view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the non-moving party." Madonna v. United States, 878 F.2d 62, 65 (2d Cir.1989). The allegations contained in the complaint must be accepted as true, and the complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)). Where the complaint involves a civil rights violation, as it does here, the standard is to be "applied with particular strictness." Branum v. Clark, 927 F.2d 698, 705 (2d Cir.1991) (citations omitted).
 
 
 13
 The district court essentially found that any right of privacy that Doe possessed was waived by his bringing a claim to the Commission, because city Administrative Code required the public dissemination of all settlements entered pursuant to the Commission's authority. Our inquiry, therefore, centers on two important questions: (1) whether Doe had a constitutional right to privacy in his HIV status; (2) and whether that right was waived by his bringing a discrimination complaint to the Commission, thereby making his HIV status a matter of public record.
 
 I. Doe's Right to Privacy
 
 14
 We must first determine whether an individual such as Doe has a constitutional right to privacy in his HIV status. Doe misinterprets the district court's decision to mean that the court found no constitutional right to privacy in such information. In fact, the district court actually held that such a right existed, but that Doe had essentially waived any right to privacy by bringing the action to a public agency bound by law to reveal to the public any conciliation agreements made pursuant to its authority. Similarly, the city does not contend in its brief that there is no right to privacy in one's HIV status; rather, the city simply claims that, as the district court found, Doe's medical condition was a matter of public record under law.
 
 
 15
 Individuals who are infected with the HIV virus clearly possess a constitutional right to privacy regarding their condition. In Whalen v. Roe, the Supreme Court recognized that there exists in the United States Constitution a right to privacy protecting "the individual interest in avoiding disclosure of personal matters." 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977) ("Whalen"); see also Nixon v. Administrator of General Services, 433 U.S. 425, 457, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977) (reaffirming existence of right to privacy in personal information); Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (stating that "the right to be let alone" is "the right most valued by civilized men") (Brandeis, J., dissenting). In Barry v. City of New York, we applied Whalen and affirmed that the "privacy of personal matters is a protected interest." 712 F.2d 1554, 1559 (2d Cir.), cert. denied, 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983); see also Eisenbud v. Suffolk County, 841 F.2d 42, 46 (2d Cir.1988). There is, therefore, a recognized constitutional right to privacy in personal information.
 
 
 16
 More precisely, this right to privacy can be characterized as a right to "confidentiality," to distinguish it from the right to autonomy and independence in decision-making for personal matters also recognized in Whalen. See 429 U.S. at 599-600, 97 S.Ct. at 876-77; Barry, 712 F.2d at 1559 (discussing the "confidentiality branch of the right to privacy"). This right to confidentiality was recognized in both Barry and Eisenbud in the context of financial disclosures, but the analysis employed in both is appropriate for the evaluation of a violation of a right to confidentiality regarding other types of personal information, including information relating to the status of one's health. See Schachter v. Whalen, 581 F.2d 35, 36-37 (2d Cir.1978) (per curiam) (applying Whalen to similar context of disclosure of medical information, holding that constitutional right not infringed because statute had legitimate public-interest justification and substantial security procedures).
 
 
 17
 Medical information was the subject of the Third Circuit's opinion in United States v. Westinghouse Electric Corp., which recognized that "[i]nformation about one's body and state of health is matter which the individual is ordinarily entitled to retain within the 'private enclave where he may lead a private life.' " 638 F.2d 570, 577 (3d Cir.1980) (quoting United States v. Grunewald, 233 F.2d 556, 581-82 (2d Cir.1956) (Frank, J., dissenting) (footnote omitted), rev'd 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957)). We agree that the right to confidentiality includes the right to protection regarding information about the state of one's health.
 
 
 18
 Extension of the right to confidentiality to personal medical information recognizes there are few matters that are quite so personal as the status of one's health, and few matters the dissemination of which one would prefer to maintain greater control over. Clearly, an individual's choice to inform others that she has contracted what is at this point invariably and sadly a fatal, incurable disease is one that she should normally be allowed to make for herself. This would be true for any serious medical condition, but is especially true with regard to those infected with HIV or living with AIDS, considering the unfortunately unfeeling attitude among many in this society toward those coping with the disease. An individual revealing that she is HIV seropositive potentially exposes herself not to understanding or compassion but to discrimination and intolerance, further necessitating the extension of the right to confidentiality over such information. We therefore hold that Doe possesses a constitutional right to confidentiality under Whalen in his HIV status.
 
 
 19
 Recognizing this right to confidentiality, however, does not end this inquiry. We still must resolve whether this right was waived by Doe's entering into a Conciliation Agreement that pursuant to application of city Administrative Code became a public document.II. Public Record
 
 
 20
 The city argues that, as the district court found, Doe did not have any privacy interest in his HIV status because his status was a matter of public record by operation of city Administrative Code. Certainly, there is no question that an individual cannot expect to have a constitutionally protected privacy interest in matters of public record. See Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 493-96, 95 S.Ct. 1029, 1045-47, 43 L.Ed.2d 328 (1975) (holding that newspaper could not be held liable for publishing information released to public in official court records); Scheetz v. Morning Call, Inc., 946 F.2d 202, 207 (3d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1171, 117 L.Ed.2d 417 (1992) (holding that press was not liable for publishing contents of police reports). If Doe's HIV status indeed automatically became a matter of public record, then the district court's determination that he has no privacy interest in his status is correct.
 
 
 21
 Doe argues, however, that his HIV status was not a matter of public record by operation of statute, but only because the Commission chose to make it so. Cox and Scheetz involved plaintiffs suing the press for its use of public documents. In contrast, Doe is suing the city itself for allegedly making a private matter public. Doe argues that the Commission transformed his confidential HIV status into a public record by issuing a press release when he had every reasonable expectation and assurance that his Conciliation Agreement would remain confidential and that by entering into the agreement he was not waiving his right to confidentiality.
 
 
 22
 The city contends that Doe could have no reasonable expectation of privacy once he filed a claim with the Commission and entered into the Conciliation Agreement, because the Administrative Code automatically requires public disclosure of all conciliation agreements. We find this argument to be meritless, in conflict not only with the actual language of the statute but also with what is presumably the intended purpose of the statute.
 
 
 23
 The statute does not lend itself to the absolute reading the city now tries to give to it. The city seems to regard the Administrative Code as requiring without exception public pronouncement of the intimate details of conciliation agreements. In fact, the pertinent section of the administrative code states that conciliation agreements "shall be made public unless the complainant and respondent agree otherwise and the commission determines that disclosure is not required." Administrative Code, Sec. 8-115(d) (emphasis added). The statute itself contemplates exceptions to the general rule in cases where the parties and the Commission agree. Moreover, the statute gives the Commission discretion to determine if disclosure is not required, in cases where, perhaps, publication of the details of a situation might identify an individual expecting to have his privacy respected. It is not, therefore, the statute that is objectionable, but the exercise of discretion by the Commission to reveal the details of Doe's Conciliation Agreement despite the obvious indications that both parties wished the details to remain confidential.
 
 
 24
 We also note that the city's argument ignores the very nature of a Commission on Human Rights. The city essentially contends that any individual seeking assistance from the particular public agency specifically authorized to vindicate his human and civil rights automatically relinquishes any rights of privacy he might have regarding his claim. This ignores the fact that the purpose of the Commission is to protect the human rights of the people of New York, which include the right to privacy in certain types of personal information. An Orwellian statute that mindlessly and indifferently mandated that any and all information provided to the Commission automatically became a public record--even in cases where the reason the complainant went to the Commission was because of a violation of a right to privacy--would be patently inconsistent with the protection of individual privacy rights, and thereby inconsistent with the purposes of the Commission. Certainly, there are times that the Commission deals with issues and situations for which publicity can bring appropriate pressure to bear on the respondent in a discrimination suit and deter others from discriminating in the same way, thus serving the purposes of the Commission. Presumably, it is for that reason that the Administrative Code provides for public dissemination of some conciliation agreements. There are other times, however, when the intensely personal nature of a discrimination complaint--such as the instant case--requires and deserves privacy in order to protect the rights of the complainants. Again, presumably, that is why the statute provides the Commission with the discretion to maintain the privacy of some conciliation agreements. To claim, however, that because the Commission is a public agency all information provided to it is automatically a matter of public record is to undermine entirely the purpose of a Commission on Human Rights, and to heedlessly make public that which is often surely intended to remain private. We refuse to believe that the statute could have been intended to yield such a result.
 
 
 25
 Agreeing that Doe has absolutely no right--as a matter of law--to confidentiality in his HIV status because it is a public record would give the Commission the benefit of its own alleged wrongdoing. The Conciliation Agreement was not a public record until the Commission, pursuant to city Administrative Code, chose to make it one.
 
 
 26
 Such a plain reading of the Administrative Code demonstrates why the dismissal pursuant to Fed.R.Civ.P. 12(b)(6) must be reversed. Accepting Doe's allegations as true, as we must on this review, Doe has set forth facts supporting his claim that his right to confidentiality was not waived by his filing a claim with the Commission and agreeing to the Conciliation Agreement. Doe could quite conceivably prove based on the facts in his complaint that reading the Administrative Code and the Conciliation Agreement in tandem led him to believe that the Commission would exercise its discretion to protect his constitutional right to confidentiality, rather than to extinguish it. Moreover, Doe might be able to prove at trial that the Commission's "So Order[ing]" of the Conciliation Agreement--including the agreement's confidentiality clause--was, in effect, a determination that disclosure was not required, a determination the subsequent reversal of which violated Doe's confidentiality rights. It is possible, of course, that Doe knew when entering into the Conciliation Agreement that the agreement would become a matter of public record, despite the confidentiality clause in the settlement, and that he thereby waived his privacy interest. Cf. Fraternal Order of Police Lodge No. 5 v. City of Philadelphia, 812 F.2d 105, 111 (3d Cir.1987) (right to privacy can be waived). We also note that, in light of the Administrative Code's provision for publication of conciliation agreements, an individual possessing a right to confidentiality could waive that right if she failed to take the precaution of getting the respondent and the Commission to agree to confidentiality. In this case, however, Doe has pleaded facts consistent with non-waiver, alleging that he signed the Conciliation Agreement with the understanding that the parties and the Commission agreed to protect his identity. For that reason, dismissal for failure to state a claim was unwarranted.
 
 III. Summary
 
 27
 In sum, we hold that Doe has a right to privacy (or confidentiality) in his HIV status, because his personal medical condition is a matter that he is normally entitled to keep private. We also hold that Doe's HIV status did not, as a matter of law, automatically become a public record when he filed his claim with the Commission and entered into the Conciliation Agreement.
 
 
 28
 Still to be resolved is whether the city had a substantial interest in issuing the press release announcing the Conciliation Agreement that outweighs Doe's privacy interest. Our holding that Doe's HIV status did not automatically become a matter of public record by virtue of city Administrative Code does not necessarily mean that he will ultimately prevail. Doe's right to confidentiality in his HIV status is no more absolute than the right to control access to other types of personal information. See Westinghouse, 638 F.2d at 578. Rather, the city's interest in disseminating information concerning conciliation agreements must be "substantial" and must be balanced against Doe's right to confidentiality. See Barry, 712 F.2d at 1559-60 (holding that "some form of intermediate scrutiny or balancing approach is appropriate as a standard of review" and that interest of government must be shown to be "substantial").
 
 
 29
 Moreover, because this case comes to us from a grant of a Rule 12(b)(6) motion, there are numerous factual issues still to be resolved, including but not limited to whether Doe actually waived his constitutional right and whether the city's press release actually identified Doe. The resolution of these issues will have to take place in further proceedings consistent with this opinion.
 
 CONCLUSION
 
 30
 For the above reasons, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.