Hector **LEON**, Plaintiff,

v.

Sally B. **JOHNSON**, et al., Defendants.

No. 97–CV–6041L.

United States District Court,
W.D. New York.

May 22, 2000.

245

Hector Leon, Staten Island, NY, pro se.

Emil J. Bove, Office of New York State Attorney General, Rochester, NY, for Sally B. Johnson, Superintendent, Carol Priess, Deputy Superintendent for Administration, R.J. Kirby, Mr., Deputy Superintendent of Security, Elizabeth James, Nurse Administrator, B. Sinha, Orleans Correctional Facility, defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Hector Leon, appearing pro se, commenced this action under 42 U.S.C. § 1983. Plaintiff, who is an inmate in the custody of the New York State Department of Correctional Services, alleges that defendants, who at all relevant times were employed at Orleans Correctional Facility, failed to apprise Leon in Spanish, his native language, of Orleans's medical policies, and that as a result he did not receive his prescribed AIDS medication until several weeks after he arrived at Orleans. Plaintiff also alleges that because there were no Spanish-speaking personnel on the Orleans medical staff, plaintiff was forced to utilize other inmates as interpreters, which caused him to disclose his condition to those inmates. Plaintiff alleges that these acts and omissions violated his rights to privacy and to be free from cruel and unusual punishments as guaranteed by the United States Constitution. Plaintiff requests an award of compensatory damages of $250,000, and the same amount in punitive damages. Defendants have moved for summary judgment.

## FACTUAL BACKGROUND

The complaint alleges that on March 8, 1996, Leon arrived at Orleans Correctional Facility, having been transferred from Attica Correctional Facility. Plaintiff alleges that at that time, he spoke only Spanish. When he arrived, however, Leon was provided with an orientation manual, written in English, regarding the policies of the

Health Services Unit at Orleans. Plaintiff alleges that because he could not read that manual, he did not realize that he was supposed to go to the infirmary to pick up his medication.

Apparently plaintiff at some point contacted the Legal Aid Society ("LAS") in New York City, informing them that he had not been receiving his medication since his transfer to Orleans.[1] Michela Bowman, a Legal Assistant at LAS, then wrote a letter dated April 12, 1996 to a Dr. Hussain at Orleans, asking that Leon be provided all necessary medications as soon as possible. Bowman also relayed Leon's concern about having to use inmate interpreters due to the lack of Spanish-speaking medical staff.

In a letter dated April 12, 1996, defendant Brij Sinha, M.D. responded to Bowman's letter. Dr. Sinha recommended that Bowman inform Leon that he needed to pick up his medication at the infirmary, and informed her that a Spanish-language orientation packet was available to plaintiff upon his request. With respect to the interpreter matter, Dr. Sinha stated that Leon "is to provide his own interpreter." Dr. Sinha said that Orleans had no Spanish-speaking medical providers on its staff, but that there were two Spanish-speaking counselors that Leon could contact to see if they would be willing to be present at sick call.

Bowman then wrote to Leon on April 24, 1996, informing him of Dr. Sinha's response. Although it is not exactly clear from the record when plaintiff did begin receiving his medications at Orleans, it appears that this occurred at around this time. The record also reflects that Leon was provided with a Spanish version of the orientation materials on July 2, 1996.

Plaintiff subsequently filed several grievances concerning these matters. Ultimately these were reviewed by the Cen-

tral Office Review Committee, which found that it did not appear that Leon had any language problems with the Orleans medical staff, but added that "the use of inmate interpreters for medical matters is inappropriate. Staff should be used for this purpose." Affidavit of Sally B. Johnson (Docket Item 45) Ex. E.

The complaint asserts three causes of action. The first alleges that defendants have provided plaintiff with inadequate medical care by causing him to go without his medication for an unreasonable length of time. The second cause of action alleges that defendants violated plaintiff's right to privacy by allowing the use of inmate interpreters. The third cause of action appears simply to restate both of these claims.

## DISCUSSION

### I. Denial of Medical Care

Plaintiff's first cause of action (and as explained, to some extent his third cause of action as well), though citing no particular legal basis, appears to arise from an alleged violation of Leon's rights under the Eighth Amendment's proscription of cruel and unusual punishments. That amendment has been construed not only to cover "punishments" in the ordinary sense of that word, but also, in some situations, inadequate medical care. *See, e.g., Farmer v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

In order to establish a § 1983 claim based on inadequate medical care, a plaintiff must prove "deliberate indifference to [his] serious medical needs" on the part of the defendants. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The standard of deliberate indifference includes both subjective and objective components. "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'" *Hathaway v.*

---

1. The record indicates that the Legal Aid Society was able to communicate with Leon in Spanish.

*Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (citations omitted), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995); *Ramos v. O'Connell,* 28 F.Supp.2d 796, 802 (W.D.N.Y.1998). Second, the defendant "must act with a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. An official acts with the requisite deliberate indifference when that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970.

█ In addition to the Eighth Amendment, the Prison Litigation Reform Act ("PLRA") also bears upon this case. Pursuant to that Act, which became effective in 1996, 42 U.S.C. § 1997e(e) now provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Defendants contend that plaintiff's Eighth Amendment claim fails because there is no evidence that plaintiff suffered any physical injury as a result of the delay in his receipt of medication. In response, plaintiff asserts that the denial of his prescribed medication alone satisfies the physical-injury requirement of § 1997e(e).

█ Although the statute itself does not define "physical injury," there is authority that the standard is essentially the same as that under the Eighth Amendment. "That is, the injury must be more than *de minimis,* but need not be significant." *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir.1997); *see also Liner v. Goord,* 196 F.3d 132, 135 (2d Cir.1999) (holding that § 1997e(e) did not bar § 1983 claim based on alleged sexual assaults, since assaults

"would constitute more than *de minimis* injury if they occurred"; citing *Siglar* ).[2]

The court has found one case addressing the issue of whether a denial of medication, standing alone, can constitute a "physical injury" for purposes of § 1997e(e). In *Franklin v. Gilless,* 870 F.Supp. 792 (W.D.Tenn.1994), the court dismissed a claim based on an alleged delay in the inmate plaintiff's receipt of medicine for an unspecified period. Dismissing the complaint on the ground that it was frivolous, the court stated that the injury alleged was a "*de minimis* injury not cognizable under the Eighth Amendment." *Id.* at 796 (citing *Hudson v. McMillian,* 503 U.S. 1, 9–10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). The court also noted that the plaintiff ultimately "received the medication and allege[d] no ill-effects of not receiving it." *Id.*

I likewise conclude that, absent some concrete physical harm, a delay in providing medication is not an "injury" of the type contemplated by the statute. First, there are the words themselves: "physical injury." Congress's use of these words suggests that there must be some actual harm to the plaintiff, and that the harm must be bodily in nature. The "harm" alleged here, however—a delay in receipt of medication to treat plaintiff's disease— is at most merely a potential harm, possibly putting plaintiff at risk of a worsened condition. Plaintiff does not allege that his condition did become worse as a result of not taking his medication, however, and there is no evidence that he suffered any adverse effects from the delay. *See Zehner v. Trigg,* 952 F.Supp. 1318, 1322–23 (S.D.Ind.) (dismissing Eighth Amendment claim based on prisoners' exposure to asbestos where no physical injury could be shown), *aff'd,* 133 F.3d 459, 461 (7th Cir. 1997); *see also Mason v. Schriro,* 45 F.Supp.2d 709, 716 (W.D.Mo.1999) ("A re-

**2.** In *Harris v. Garner,* 190 F.3d 1279 (11th Cir.1999), a three-judge panel of the Court of Appeals for the Eleventh Circuit joined the Fifth Circuit's holding in this regard. *Id.* at

1286–87. The court has since vacated that decision and ordered the appeal to be reheard *en banc.* 197 F.3d 1059.

view of cases from other courts indicates that [§ 1997e(e)] is most frequently applied where plaintiff alleges that defendants' actions have caused him to fear physical injury and fear for his safety and welfare, but he fails to show any physical injury"; collecting cases).

In addition, although the complaint alleges that plaintiff "was subjected to pain and suffering by this medical neglect," Supplemental Complaint ¶ 13, in his affidavit in response to defendants' summary judgment motion, plaintiff makes no such allegation, asserting instead only that the "physical injury requirement is satisfied in the instant case by the diagnosis of AIDS which mandates a regimen of medication, which regimen had been denied to" plaintiff. Plaintiff's Affidavit (Docket Item 49) ¶ 14. For the reasons stated, I do not accept that argument, and I also find that the bare allegation of pain and suffering in the complaint (which does not say whether the pain and suffering were physical or emotional) is insufficient to defeat defendants' motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Cain v. Commonwealth of Virginia*, 982 F.Supp. 1132, 1135 n. 3 (E.D.Va.1997) (headaches causing vision loss and requiring pain medication as well as numbness, joint pain and stomach cramps did not constitute physical injury within scope of § 1997e(e)); *Pinkston–Bey v. DeTella*, 1997 WL 158343, at *3 (N.D.Ill. Mar.31, 1997) (severe headaches not physical injury).

■ Even if plaintiff could show that he suffered a physical injury for purposes of § 1997e(e), however, this claim would have to be dismissed, because plaintiff's allegations and the evidence presented do not indicate any "deliberate indifference" to plaintiff's serious medical needs. At most,

the evidence suggests that some defendants may have been negligent, but that is not enough to support a § 1983 claim. *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d Cir. 1994); *Stubbs v. Dudley*, 849 F.2d 83, 85 (2d Cir.1988), *cert. denied*, 489 U.S. 1034, 109 S.Ct. 1095, 103 L.Ed.2d 230 (1989).

Viewing the evidence in the light most favorable to plaintiff, all that it shows is that he was not initially given a Spanish-language version of the orientation packet when he arrived at Orleans, and that as a result of his inability to read English, he was unaware that he was supposed to go to the infirmary to pick up his medication. No one, however, deliberately withheld medication from plaintiff, or refused to explain to him what the procedures were.[3]

There is also no evidence that plaintiff ever attempted to obtain this information from any staff members at Orleans, or that he indicated to anyone that he could not understand the orientation materials. The record shows that despite the alleged language barrier, plaintiff could have made such an attempt. Although the complaint alleges that plaintiff could not speak or understand English, the evidence shows that he had received over *2000* hours of bilingual education at Attica prior to his transfer to Orleans. Affidavit of Jose Reyes (Docket Item 40) Ex. A.

Perhaps recognizing that the evidence contradicts his claim in this regard, in his affidavit in response to defendants' motion, plaintiff now admits that he could speak and understand some English, but states that although he was able to "speak enough of [the English] language to communicate after a fashion, . . . to read, write and/or comprehend fully that language is another matter." Plaintiff's Aff. § 8. That may be so, but one need not be able to *fully* comprehend a language in order to

---

**3.** Plaintiff has also not rebutted defendants' assertion that the procedures for prescribing and administering medicines were essentially the same at Orleans as they had been at Attica during plaintiff's stay there, which should have alerted him to the possibility that it was up to him to go to the infirmary to obtain his medication.

communicate a request for assistance or information. Plaintiff has not rebutted defendants' allegations that he has communicated with Orleans medical staff in English, and although it appears that his English is limited, there is no evidence that it was so deficient that he could not have asked someone about his medication. For the same reasons, even if plaintiff could not read the portions of the orientation material dealing with administration of medication, the evidence contains no indication that any of the defendants should have been aware of that. As stated, plaintiff does not allege that he in any way attempted to explain to anyone that he could not read the orientation materials, and since he clearly had some English skills, there is no reason to think that it would have been obvious to an observer that he could not read the materials.

Moreover, once the staff at Orleans was made aware by the letter from LAS that plaintiff had not been receiving his medication, the situation was promptly rectified. In short, there is no evidence that any of the defendants were "both ... aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that they did draw that inference. *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. The court is aware of no authority to support the proposition that the Eighth Amendment places an affirmative duty upon prison officials to see to it that all inmates are taking all of their prescribed medicines at all times, even when those inmates do not request their medicine or indicate a lack of awareness of what is required for them to receive their medication.

Finally, the evidence shows that plaintiff's treatment at Orleans was anything but neglectful. The documentary evidence reveals that plaintiff was seen by medical staff at least once a month, and often more than that, and that medications were prescribed for him and tests performed on a regular basis. *See* Affidavit of Brij Sinha, M.D. (Docket Item 47), Ex. A. Plaintiff has taken one small aspect of that course of treatment, a delay of several weeks in getting him his medications, which is attributable at most to negligence on the part of some Orleans staff members, if not to plaintiff's own inaction, and attempted to fashion from it an Eighth Amendment claim. For the reasons given, that attempt fails.

## II. Right to Privacy

Plaintiff's other claim is that the lack of Spanish-speaking medical staff at Orleans forced him "to discuss his medical condition to unauthorized persons, against plaintiff's will and contrary to law." Amended Complaint ¶ 25. Plaintiff alleges that he has been subjected to ridicule and humiliation as a result.

In *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir.1994), the Court of Appeals held that "[i]ndividuals who are infected with the HIV virus clearly possess a constitutional right to privacy regarding their condition." The court extended that right to inmates in *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir.1999), holding that "prison officials can impinge on that right only to the extent that their actions are reasonably related to legitimate penological interests" (internal quotes omitted).

This claim, too, appears to be barred by § 1997e(e)'s physical-injury requirement. In *Davis v. District of Columbia*, 158 F.3d 1342 (D.C.Cir.1998), the Court of Appeals for the District of Columbia Circuit held that § 1997e(e) barred a claim for damages based on an allegation that a corrections officer had broken the seal on the inmate plaintiff's medical records and disclosed their contents to others without the plaintiff's consent, allegedly telling others that the plaintiff was dying of HIV. The court held that the plaintiff's claims for both compensatory and punitive damages were "directly barred" by the statute, as the plaintiff had "alleged no compensable injury." *Id.* at 1348.

It is true that the Second Circuit upheld a similar claim in *Powell*, which was decided in 1999. The *complaint* in that case, however, was filed in 1992, years before the effective date of the PLRA, the provisions of which apply only to prisoner cases filed on or after the Act's effective date of April 26, 1996. *See Salahuddin v. Mead*, 174 F.3d 271, 273 (2d Cir.1999); *Blissett v. Casey*, 147 F.3d 218, 221 (2d Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 2392, 144 L.Ed.2d 793 (1999). The complaint in the instant case was filed in 1997.

In the instant case, the complaint alleges that as a result of the disclosure of plaintiff's medical condition, "plaintiff was greatly injured mentally and suffered damage to both his reputation and his esteem." Complaint ¶ 27. Those are the only damages alleged, and they appear to fall squarely within ¶ 1997e(e)'s reference to prisoner actions "for mental or emotional injury suffered while in custody without a prior showing of physical injury." Moreover, the only relief sought by plaintiff is an award of money damages. *See Davis*, 158 F.3d at 1345 (construing PLRA as limiting only the availability of damages); *accord Zehner v. Trigg*, 133 F.3d 459 (7th Cir.1997).

■ Even if I were to reach the merits of this claim, however, I would grant defendants' motion for summary judgment. First, there is no evidence, and indeed no allegation, that defendants themselves disclosed plaintiff's condition to other inmates or others with no legitimate need to know of his condition. Instead, plaintiff alleges that he himself divulged that information to others because of his need for an interpreter.

Whether this states a constitutional claim is debatable. In *Clarkson v. Coughlin*, 898 F.Supp. 1019 (S.D.N.Y.1995), a class action, the district court granted summary judgment for the inmate plaintiffs on their claim that their right to privacy had been violated when prison authorities used "fellow inmates, a chaplain and DOCS personnel who [we]re not under any obligation to maintain the confidentiality of medical information, as makeshift interpreters for purposes of administering medical care to class members." *Id.* at 1349. In support of this holding, the court stated that "[u]nless the person interpreting for purposes of medical care is bound to maintain the confidentiality of the information being exchanged, the inmate/patient's constitutional privacy right is violated." *Id.*

In *Franklin v. District of Columbia*, 163 F.3d 625, 638–39 (D.C.Cir.1998), however, the District of Columbia Circuit rejected this view, holding that "Spanish-speaking prisoners with limited proficiency in English do not have a privacy right, derived from the Constitution, to force the District to hire bilingual medical personnel so that the prisoners may communicate their medical information only to such employees." In reaching that conclusion, the court observed that "for inmates lacking proficiency in English, having other inmates or correctional employees translate for them when they seek medical care is 'one of the ordinary incidents of prison life'; indeed, outside of prison it is doubtless an ordinary incident of everyday life for non-English speaking persons to receive help from others in order to communicate with their doctors." *Id.* at 638 (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). In a footnote, the court, referring to *Clarkson*, stated, "Odd though it may be, one district court summarily endorsed the concept" that the use of inmate translators violates inmates' right to privacy, adding that "[t]his elevates the evidentiary doctor-patient privilege and the ethical obligations of physicians to a constitutionally-required status." *Id.* at 638 n. 13.

Assuming, without deciding, that under some circumstances the use of inmate translators can give rise to a violation of an inmate's right to privacy with respect to his medical condition, I find no evidence of a violation here. Plaintiff has not presented evidence that he was forced to use

other inmates to translate for him in the course of his medical treatment, and that the nature of his condition was disclosed to other inmates as a result.

In his affidavit in opposition to defendants' motion, plaintiff states that an interpreter was used on July 2, 1996. He does not dispute, however, that the interpreter was Jose Reyes, a Correction Counselor. Plaintiff consented to Reyes serving as an interpreter before any discussions were had concerning Leon's medical condition. Reyes Aff. ¶ 10; Sinha Aff. Ex. A at 16. The use of an inmate counselor does not implicate the concerns expressed by the Second Circuit in *Powell* that "disclosure [to other inmates] might lead to inmate-on-inmate violence," 175 F.3d at 113, and in terms of the inmate's privacy interests, is little different from disclosure to a member of the facility's medical staff. Moreover, this disclosure was no more damaging to plaintiff's privacy interests than his own voluntary disclosure of his HIV-positive status to defendant Superintendent Sally Johnson and defendant Deputy Superintendents Carol Preiss and Robert Kirby. *See* Johnson Aff. Exs. B, C, and D.

Plaintiff has identified only one occasion on which he used an inmate to serve as an interpreter in connection with his medical treatment. On March 19, 1997, plaintiff signed a consent to have a particular inmate interpret for him "when seeing the medical records." Sinha Aff. Ex. A at 17. However, there is no indication that plaintiff was treated on that date, or that he discussed his condition with anyone at that time. It appears only that plaintiff wished to see his records, and that he selected a certain inmate, whom he presumably trusted, to interpret them for him if necessary.

At no time, then, does it appear that plaintiff was "forced" to use an inmate to interpret for him, or that knowledge of his condition was disseminated to inappropriate persons. Unlike *Powell*, in which the plaintiff's transsexualism was gratuitously disclosed "as humor or gossip," 175 F.3d at 107, here defendants took reasonable steps to allow plaintiff to have the services of a translator, with his consent, while maintaining the confidentiality of his medical information. I therefore find no evidence of a violation of plaintiff's rights.

■■■■■ Even if a violation could be found, however, defendants would be entitled to qualified immunity for their actions. Qualified immunity shields public officials "from civil damages liability insofar as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,' *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), or insofar as 'it [is] objectively reasonable for them to believe that their acts d[o] not violate those rights,' *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir.1994)." *Simms v. Village of Albion*, 115 F.3d 1098, 1106 (2d Cir.1997); *accord Brown v. City of Oneonta*, 106 F.3d 1125, 1130–31 (2d Cir.1997).

■■■■■ "Summary judgment in favor of public officials may be appropriate when a qualified immunity defense is based upon a showing that it was not clear at the time of the officials' acts that the interest asserted by the plaintiff was protected by federal law." *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir.1993). Therefore, "[t]o defeat an official's claim of qualified immunity, the individual's right must have been clearly established at the time of the alleged violation." *LaBounty v. Coughlin*, 1996 WL 711497 *1 (S.D.N.Y.1996). (citations omitted). In determining whether a right was clearly established, the court should consider "(1) whether the right in question was defined with 'reasonable specificity,' (2) whether the decisional law of the Supreme Court and the [Second Circuit] support[s] the existence of the right in question, and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Brown*, 106 F.3d at 1131 (quoting *Jermosen v. Smith*, 945 F.2d 547, 550 (2d. Cir.1991), *cert. denied,*

503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992)).

In the case at bar, the right asserted—that of an inmate not to have his HIV-positive status or the fact that he is suffering from AIDS—was not clearly established until *Powell* was decided in 1999. The acts at issue here occurred in 1996 and 1997. Although *Doe*, which did not involve an inmate, was decided in 1994, the Second Circuit in *Powell* made clear that *Doe* did not clearly establish such a privacy right for inmates, stating that *Doe* "did not address the applicability of that right to prison inmates." *Powell*, 175 F.3d at 114. For this reason and the others cited, Leon's claim based upon an alleged violation of his right to privacy must be dismissed.

## CONCLUSION

Defendants' motion for summary judgment (Docket Item 36) is granted, and the complaint is dismissed.

IT IS SO ORDERED.