**Manuel CORTES, Plaintiff,**

v.

**Sally B. JOHNSON, et al., Defendants.**

**No. 97–CV–6425L.**

United States District Court,
W.D. New York.

Sept. 18, 2000.

Manuel Cortes, Orleans Correctional Facility, Albion, NY, plaintiff pro se.

Carlos Rodriguez, Office of New York State Attorney General, Rochester, NY, Susan Terry, New York State Office of the Attorney General, Rochester, NY, for Sally B. Johnson, defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

### Procedural Background

Plaintiff, Manuel Cortes, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, while an inmate in the custody of the New York State Department of Correctional Services, alleged in his complaint that defendants, who at all relevant times were employed at Orleans Correctional Facility ("Orleans"), failed to provide him with appropriate medical treatment and non-inmate [1] interpreters of Spanish, plaintiff's native language. By order of Hon. John T. Elfvin, entered November 17, 1997 (Dkt.# 4), the Court dismissed with prejudice plaintiff's claims regarding the alleged denial of appropriate medical treatment, and, as a result, dismissed the claims against all defendants except Sally B. Johnson, Superintendent of Orleans. Presently before the Court is Johnson's motion for summary judgment.

### Factual Background

Plaintiff claims that beginning in June 1995, he began complaining about pain in his lower back and legs. Plaintiff alleges, however, that he speaks only Spanish, and that each time he was seen by a doctor or nurse in Orleans, he had no choice but to communicate through an inmate interpreter.

Plaintiff subsequently filed several grievances requesting, *inter alia*, medically qualified Spanish-speaking personnel to interpret for him. Prior to December 1996, the policy at Orleans was that an inmate who required or requested a Spanish-speaking interpreter for receipt of medical care could either "bring a trusted

---

1. Plaintiff's complaint merely requests that he be afforded an interpreter who is not an inmate. (*See* Complaint, para. V: "Relief ... that this facility assign someone to interpreter [*sic*] for the spanish [*sic*] population who is not an inmate"). However, in grievances he filed prior to the commencement of this action and in response to the instant motion, plaintiff narrows his request and instead argues that "medically qualified" interpreters be provided.

friend to interpret," or "authorize the Spanish-speaking inmate assigned to the Orleans infirmary to interpret." Affidavit of Sally Johnson, para. 8. After December 6, 1996, that policy was revised to allow the inmate the additional choice of requesting a Spanish-speaking guidance counselor (a non-inmate) to serve as the interpreter. *Id.*, paras. 11–12. The policy at Orleans never provided for "medically qualified" interpreters. Ultimately, plaintiff's grievances were reviewed by the Central Office Review Committee, which sustained Superintendent Johnson's determination that:

> a "medically qualified" staff member is not required, since the information has been relayed from the physician and/or nurse to the grievant via the staff interpreter, typically a counselor.

(*Id.*, Ex. O, Dkt. # 32). With respect to a second grievance, the Central Office Review Committee sustained Superintendent Johnson's determination that plaintiff:

> may request the staff member to interact for him and one will be provided with the grievant's written consent. This interpreter does not have to be a health-care provider, as he/she merely interprets to the patient the information as relayed by the qualified health provider.

(*Id.*, Ex. H).

### Discussion

■ The only claim remaining in this action is that defendant violated plaintiff's right to privacy by failing to provide medically qualified interpreters of Spanish rather than inmate interpreters or non-medically qualified, non-inmate interpreters. In particular, plaintiff alleges that because there were no Spanish-speaking personnel on the Orleans medical staff, plaintiff was forced to utilize other inmates as interpreters, which caused him to disclose his condition to those inmates. In essence, plaintiff alleges that these acts and omissions violated his rights to privacy and to be free from cruel and unusual punishments as guaranteed by the United States Constitution.

Although the Second Circuit has not specifically addressed this issue, the District of Columbia Circuit has addressed whether inmates enjoy a constitutional right to medically qualified interpreters. In *Franklin v. District of Columbia*, 163 F.3d 625, 638–39 (D.C.Cir.1998), a case directly on point, the District of Columbia Circuit held that "Spanish-speaking prisoners with limited proficiency in English do not have a privacy right, derived from the Constitution, to force the District to hire bilingual medical personnel so that the prisoners may communicate their medical information only to such employees." In reaching that conclusion, the court observed that "for inmates lacking proficiency in English, having other inmates or correctional employees translate for them when they seek medical care is 'one of the ordinary incidents of prison life'; indeed, outside of prison it is doubtless an ordinary incident of everyday life for non-English speaking persons to receive help from others in order to communicate with their doctors." *Id.*, 163 F.3d at 638 (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

I recognize that well before *Franklin*, in *Clarkson v. Coughlin*, 898 F.Supp. 1019 (S.D.N.Y.1995), a class action, a district court granted summary judgment to inmate plaintiffs on their claim that their right to privacy had been violated when prison authorities used "fellow inmates, a chaplain and DOCS personnel who [we]re not under any obligation to maintain the confidentiality of medical information, as makeshift interpreters for purposes of administering medical care to class members." *Id.*, 898 F.Supp. at 1049. In support of this holding, the court stated that "[u]nless the person interpreting for purposes of medical care is bound to maintain the confidentiality of the information being exchanged, the inmate/patient's constitutional privacy right is violated." *Id.*

*Clarkson*, however, is not controlling precedent, and I do not find it persuasive. Moreover, it may be distinguished. In

that case, the class consisted of hearing-impaired inmates who required sign language interpreters in order to communicate. In the instant case, plaintiff admits that he has been enrolled in certain English courses, and presumably he can speak and understand at least some English. *See* Plaintiff's Responses to·Interrogatories, 2(c), Dkt. # 8; Plaintiff's Request for Appointment of Counsel, Dkt. # 3. In addition, in *Clarkson*, "at least two class members experienced … harmful treatment through the provision of medical treatment in the absence of qualified interpreters," *id.* at 1047, while here plaintiff neither identifies a specific harm he incurred because of unqualified interpreters, nor points to a particular medical communication that was impaired. Moreover, the District of Columbia Circuit rejected *Clarkson*'s analysis and holding in *Franklin* when it stated: "Odd though it may be, one district court summarily endorsed the concept" that the use of inmate translators violates inmates' right to privacy, adding that "[t]his elevates the evidentiary doctor-patient privilege and the ethical obligations of physicians to a constitutionally-required status." *Franklin*, 163 F.3d at 638, n. 13.

This Court has previously dealt with issues relating to inmate interpreters in another case involving a different inmate from the same institution. *Leon v. Johnson*, 96 F.Supp.2d 244 (W.D.N.Y.2000). This Court's ruling there is not inconsistent with its determination here. In *Leon*, this Court granted summary judgment against the inmate plaintiff on several grounds unrelated to the merits of the case.

First, the Court determined that the action was barred by the physical-injury requirement now mandated by statute at 42 U.S.C. § 1997e(e). In addition, the Court determined that even if a constitutional violation were to have occurred, defendant would be entitled to qualified immunity. *Id.* at 252.

On the merits, the Court determined there was no violation here even if "under some circumstances" the use of inmate

translators may give rise to a privacy right concerning the inmate's medical condition. *Id.* at 251–52. This Court's decision in *Leon* does not stand for the proposition that inmates, in all circumstances, have a privacy right that precludes the use of lay interpreters when inmates seek medical care.

■ Prisoners do not have a constitutional right to complete confidentiality of medical records. *Cf. Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir.1999) (acknowledging that prison officials can impinge on a prisoner's right to maintain the confidentiality of previously undisclosed medical information "to the extent that their actions are reasonably related to legitimate penological interests") (internal quotation marks omitted). It is true that in *Doe v. City of New York*, 15 F.3d 264 (2d Cir. 1994), the Second Circuit held that individuals who are infected with the HIV virus possess a constitutional right to privacy regarding their condition, and the court extended that right to a transsexual plaintiff in *Powell*. 175 F.3d 107. However, in *Powell*, the Second Circuit noted that medical disclosure of an inmate's status as a transsexual "constitute[s] a deliberate indifference to a substantial risk that such an inmate would suffer serious harm at the hands of other inmates." *Id.*, 175 F.3d at 114. (citation omitted). It is quite a different matter to have complaints of back and leg pain, like those of this plaintiff, or any of the medical conditions alluded to in the course of his medical treatment. Such innocuous concerns simply do not present a similar risk to his safety from other inmates, and do not compel the same heightened confidentiality as information concerning an inmate's HIV positive status or transsexualism. Furthermore, the use of an inmate counselor does not implicate the concerns expressed by the Second Circuit in *Powell* that "disclosure [to other inmates] might lead to inmate-on-inmate violence," 175 F.3d at 113, and in terms of the inmate's privacy interests, is little dif-

ferent from disclosure to a member of the facility's medical staff.

Plaintiff has presented no evidence to suggest that he was ever forced to use any particular individual to interpret for him. To the contrary, Orleans' policy afforded plaintiff the luxury of determining whether he wanted a particular inmate or even a non-inmate to serve as his interpreter, and plaintiff admits that he availed himself of that opportunity on a number of occasions. Unlike *Powell,* in which the plaintiff's transsexualism was gratuitously disclosed "as humor or gossip," 175 F.3d at 107, plaintiff here fails to present any evidence or even any allegation that knowledge of his condition was disseminated to inappropriate persons. Orleans personnel took reasonable steps to allow plaintiff to have the services of a translator, while maintaining the confidentiality of his medical information.

Furthermore, plaintiff executed a written consent form each time he elected to have an inmate translator interpret for him with respect to medical treatment. Affidavit of Sally Johnson, Ex. P. In response to plaintiff's grievance, Superintendent Johnson specifically informed plaintiff of his ability to utilize inmate or non-inmate staff members for translation purposes. In fact, between October 1, 1997 and February 23, 1998, plaintiff expressly consented to four different inmate interpreters on each of the six additional occasions when he sought medical care, although he had the option to select non-inmate interpreters. There is no evidence whatsoever to suggest plaintiff's choice of inmates to serve as his interpreters was in any way coerced. Although unnecessary to the disposition of this motion, the fact that plaintiff repeatedly consented to their use may well be deemed a waiver of any claimed infringement on his asserted right to privacy. See *Powell v. Schriver,* 175 F.3d at 112, n. 1 (noting that even the right to maintain the confidentiality of one's HIV status or transsexualism may be subject to waiver).

■■■ Even if a violation could be found, defendant would be entitled to qualified immunity for her actions. Qualified immunity shields public officials "from civil damages liability insofar as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,' *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396, (1982), or insofar as 'it [is] objectively reasonable for them to believe that their acts d[o] not violate those rights,' *Velardi v. Walsh,* 40 F.3d 569, 573 (2d Cir.1994)." *Simms v. Village of Albion,* 115 F.3d 1098, 1106 (2d Cir.1997); accord *Brown v. City of Oneonta,* 106 F.3d 1125, 1130–31 (2d Cir.1997).

■■■ "Summary judgment in favor of public officials may be appropriate when a qualified immunity defense is based upon a showing that it was not clear at the time of the officials' acts that the interest asserted by the plaintiff was protected by federal law." *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). Therefore, "[t]o defeat an official's claim of qualified immunity, the individual's right must have been clearly established at the time of the alleged violation." *LaBounty v. Coughlin,* 1996 WL 711497 *1 (S.D.N.Y.1996). (citations omitted). In determining whether a right was clearly established, the court should consider "(1) whether the right in question was defined with 'reasonable specificity,' (2) whether the decisional law of the Supreme Court and the [Second Circuit] support[s] the existence of the right in question, and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Brown,* 106 F.3d at 1131 (quoting *Jermosen v. Smith,* 945 F.2d 547, 550 (2d. Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992)).

In the case at bar, the right asserted—that of an inmate to have medically qualified Spanish-speaking translators—was not clearly established in 1996 or 1997, when the events at issue occurred. In-

deed, neither the Supreme Court nor the Second Circuit has yet decided this issue. For this reason and the others cited, Cortez' claim based upon an alleged violation of his right to privacy must be dismissed.

## Conclusion

Defendant's motion for summary judgment (Dkt.# 30) is granted, and the complaint is dismissed with prejudice.

IT IS SO ORDERED.